506 S.E.2d 39

**Nisar A. KALWAR, and his wife, Karen Denise Kalwar, Individually, and as mother and next friend of Tarik Kalwar, Hassen Kalwar, and Kshraf Kalwar, infant children under the age of eighteen years, Plaintiffs below, Appellees,**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant below, Appellant.**

**No. 24740.**

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1998.

Decided June 18, 1998.

---

**4**

Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, Brent K. Kesner, Tanya M. Kesner, Kesner, Kesner, & Bramble, Charleston, for Appellee.

W.E. Mohler, Charleston, for Appellant.

PER CURIAM: [1]

This appeal from the Circuit Court of Kanawha County concerns an order finding that an insurance carrier failed to make a commercially reasonable offer of underinsured motorist coverage to an insured. The trial court ordered that the insurance carrier provide the insured with a level of underinsured motorist coverage equal to the limits of the insured's liability policy, and ordered the insurance carrier to pay the insured's reasonable attorney's fees and costs.

On this appeal by the insurance carrier, we affirm the trial court's decision.

I.

*Facts and Background*

This action arises from an automobile accident that occurred on May 26, 1989. The plaintiff-appellee, Nisar A. Kalwar,[2] was driving his vehicle on an interstate highway when the defendant below, Barry Lee Howerton, collided with the plaintiff head-on. Mr. Howerton was driving under the influence of alcohol and drugs at a high rate of speed on the wrong side of the interstate. The plaintiff suffered severe injuries in the accident.

In August 1990, Mr. Howerton's liability insurance carrier, Allstate Insurance Company ("Allstate"), agreed to pay the plaintiff the limits of Mr. Howerton's liability policy, $50,000. The plaintiff's underinsured motorist insurance carrier, defendant-appellant Liberty Mutual Insurance Company ("Liberty Mutual"), gave the plaintiff permission to accept the Allstate settlement and waived its subrogation rights against Mr. Howerton.

Because the plaintiff's damages exceeded the $50,000 settlement made on behalf of Mr. Howerton, on May 8, 1991 the plaintiff filed this action against Mr. Howerton and against Liberty Mutual to recover underinsured motorist benefits. On May 17, 1993, the plaintiff amended his complaint to add a declaratory judgment claim against Liberty Mutual to determine the amount of coverage available through the plaintiff's underinsured motorist policy.

Liberty Mutual argued below that under the plaintiff's policy, the plaintiff had available only $20,000 in underinsurance coverage. The plaintiff, however, contended that under *W.Va.Code,* 33–6–31 [1988] and *Bias v. Nationwide Mut. Ins. Co.,* 179 W.Va. 125, 365 S.E.2d 789 (1987), Liberty Mutual was required to make a commercially reasonable offer of underinsured motorist coverage to the plaintiff at a level equal to the limits of the plaintiff's liability coverage. The plaintiff had $300,000 in single-limit liability coverage, and he alleged that his Liberty Mutual insurance agent failed to properly offer him $300,000 in underinsured motorist coverage. The plaintiff therefore contended that by operation of law he was entitled to $300,000 in underinsured motorist coverage from Liberty Mutual.

Subsequent to filing his declaratory judgment action, the plaintiff filed a motion for summary judgment. In November 1993, the trial court took evidence from the plaintiff and agents for Liberty Mutual regarding whether Liberty Mutual made a commercially reasonable offer of underinsured motorist coverage to plaintiff Kalwar. The trial court did not rule on the motion for summary judgment at that time.

The trial court did schedule a trial for January 18, 1994 to determine the liability of defendant Howerton and the extent of the plaintiff's injuries. The parties agreed by a letter dated January 14, 1994 that the plaintiff's damages were worth $250,000, and that Liberty Mutual would pay that amount if the court determined Liberty Mutual had failed

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. The other plaintiffs in this action are the plaintiff's wife, Karen Denise Kalwar, and his three children, Tarik, Hassen, and Kshraf Kalwar.

to make a proper offer of underinsured motorist coverage to the plaintiff.[3]  The parties further agreed to the cancellation of the damages trial, and agreed that each party would be responsible for costs and fees incurred in preparing for that trial.[4]

On May 9, 1994, the trial court denied the plaintiff's motion for summary judgment, holding that "the issue as to whether a commercially [reasonable] offer has been made is largely a jury question."  The trial court also indicated to Liberty Mutual that it carried the burden of proving it made such an offer to the plaintiff, and that "the record to date reveals that [the] plaintiff was not informed in specific terms concerning the cost involved" with purchasing underinsured motorist coverage.  The trial court stated that if the case proceeded to trial on the evidence then in the record, the court would· grant a directed verdict for the plaintiff.

On February 14, 1996, the parties entered into a written stipulation agreeing that the evidence presented to the trial court at the November 19, 1993 hearing was the only evidence to be presented in this case.  Based upon this stipulation, on October 7, 1996 the trial court ruled that "Liberty Mutual Insurance Company did not inform [plaintiff] Nisar Kalwar of the specific terms of the costs involved in connection with his purchase of underinsurance from the company," and that the defendant had therefore "failed to meet its burden of proving a commercially-reasonable offer of underinsurance."  The trial court therefore held that the plaintiffs' insurance policy should be reformed to include $300,000 in underinsured motorists coverage.

3.  The January 14, 1994 agreement letter from a Liberty Mutual agent to plaintiff's counsel states, in pertinent part:

> We agreed as to the value of Plaintiffs' claims being $250,000.00 above what Barry Howerton's liability insurance has paid.  This is the maximum amount that the Plaintiffs can receive if the court rules in Plaintiffs' favor on the underinsured motorist coverage issue.  In other words, if the court rules that the Plaintiffs only have $20,000.00 underinsured motorist coverage, then the Plaintiffs will receive nothing because we have already tendered $20,000.00 underinsured motorist coverage to the court. . . .  If the court rules Plaintiffs have $300,000.00, or more, underinsured motorist coverage, then Liberty Mutual will pay the

The trial court further found, based upon the parties' agreement, that the plaintiff had damages amounting to $250,000, and that Liberty Mutual had already paid the plaintiff $20,000.  The trial court ordered that Liberty Mutual pay the plaintiff $230,000 plus interest, costs, and attorneys fees.

Liberty Mutual now appeals the circuit court's October 7, 1996 order, and the circuit court's denial of a motion to reconsider that order.

## II.

### Standard of Review

The circuit court's October 7, 1996 order is essentially an order granting summary judgment based upon the stipulations of the parties and the evidence presented at the November 13, 1993 evidentiary hearing.  As we stated in Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), we review a circuit court's entry of summary judgment *de novo*.  We review challenges to findings of fact under a clearly erroneous standard.  Syllabus Point 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

## III.

### Discussion

#### A.

#### Commercially Reasonable Offer of Underinsured Motorist Insurance

Liberty Mutual's primary contention on appeal is that the trial court erred in finding

maximum of $250,000.00 less the $20,000.00 already tendered to the court.

The record is unclear, but it appears that at some point prior to January 14, 1994, Liberty Mutual paid to the plaintiff what it believed to be the limits of the underinsured motorist policy, $20,000.

4.  The January 14, 1994 letter states, in pertinent part:

> Each party will pay their own costs and attorney fees.  Since the amount to be paid, if any, under the un[der]insured motorist coverage is agreed upon there will be no damage trail [sic] on January 18, 1994.  Please advise the Circuit Court of same.

Liberty Mutual now disputes the meaning of this paragraph.  *See infra,* section III.B.

that it did not make a commercially reasonable offer of underinsured motorist coverage to the plaintiff.

When a consumer purchases an automobile liability insurance policy in West Virginia, *W.Va.Code*, 33-6-31 [1988] required the insurance carrier to offer the consumer the option to also purchase underinsured motorist insurance coverage up to the dollar limits of his liability insurance.[5] In *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), we held that the insurance carrier bears the burden of proving that a commercially reasonable offer of underinsured coverage was made to the consumer. If the insurance carrier fails to introduce sufficient proof of a commercially reasonable offer, then underinsured motorist coverage in an amount equal to the limits of liability coverage is automatically included in the insurance policy.

■ We stated in Syllabus Points 1 and 2 of *Bias:*

1. Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed.

2. When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured.

We made it clear in *Bias* that the "commercially reasonable offer" made by the insurance company must be made "so as to provide the insured with adequate information to make an intelligent decision. The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, *and the costs involved.*" 179 W.Va. at 127, 365 S.E.2d at 791 (citations omitted, emphasis added).

■ Liberty Mutual argues in a conclusory fashion that the plaintiff, who is an attorney, "was well aware of his coverage, as any lawyer would be." The defendant argues that the evidence shows that the plaintiff signed an application for insurance showing the liability insurance limits of $300,000 and the cost of the liability insurance, and that the plaintiff knowingly requested underinsured motorist coverage of only $20,000 per person bodily injury coverage, capped at $40,000 per occurrence, and $10,000 property damage coverage.

Our review of the record supports the trial court's conclusion that, while the plaintiff knew the amount of coverage he was purchasing, the insurance company failed to prove that the plaintiff was advised of the cost of the different underinsured motorist coverages up to the $300,000 single-limit liability coverage that he purchased. Furthermore, we know of no exception to our holding in *Bias* that suggests that a law school graduate is automatically endowed with knowledge of the prices of insurance coverage offered by Liberty Mutual. Accordingly, as a matter of law Liberty Mutual failed to provide the plaintiff with the necessary information from which he could have made a knowing, intelligent choice either to select or reject a higher level of underinsured motorist coverage.

We therefore affirm the trial court's finding that the defendant failed to make a com-

---

5. *W.Va.Code*, 33-6-31(b) [1988] stated in pertinent part that the insurance company:

shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an .. underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of

which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

*W.Va.Code*, 33-6-31(b) was substantially modified in 1995, but no changes were made affecting this appeal.

mercially reasonable offer of $300,000 in underinsured motorist insurance, and that the coverage was included in the policy by operation of law.

## B.

### Attorney's Fees

█ Liberty Mutual argues that the trial court's order awarding attorneys' fees and costs to the plaintiff is contrary to the parties' January 14, 1994 agreement to resolve the issues of Mr. Howerton's liability and the extent of the plaintiff's damages, wherein the parties also stated that each party would bear its own fees and costs.

We have reviewed the January 14, 1994 agreement and conclude that it applied only to the parties' settlement of the damages and liability trial scheduled for January 18, 1994. The agreement, drafted by an agent for Liberty Mutual, clearly indicates that the parties were *not* agreeing to settle the declaratory judgment action regarding the amount of underinsured motorist coverage the plaintiff had with Liberty Mutual.

█ As we pointed out in Syllabus Point 2 of *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), when an insured is required to file a declaratory judgment action against his or her insurance carrier to determine whether the insurance carrier has a particular duty to the insured under the policy, if the insurance carrier "is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment action."

We stated the rationale behind cases like *Pitrolo* recently in *Miller v. Fluharty*, 201 W.Va. 685, 694, 500 S.E.2d 310, 319 (1997):

> The policy ... is that a policyholder buys an insurance contract for peace of mind and security, not financial gain, and certainly not to be embroiled in litigation. The goal is for all policyholders to get the benefit of their contractual bargain: they should get their policy proceeds promptly without having to pay litigation fees to vindicate their rights. "We adopted this rule in recognition of the fact that, when an insured purchases a contract of insur-

ance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." *Hayseeds*[, *Inc. v. State Farm Fire & Cas.*], 177 W.Va. [323] 329, 352 S.E.2d [73] 79 [ (1986) ]. [Footnote omitted.]

When the insured in this case, plaintiff Kalwar, purchased his underinsured motorist policy from Liberty Mutual, he could not have expected to have also purchased a declaratory judgment lawsuit that would drag on for over 7 years. We therefore affirm the trial court's award of attorney's fees and costs to the plaintiff.

## C.

### Denial of Defendant's Motion to Reconsider

█ Liberty Mutual argues that the circuit court erred in signing its order of October 7, 1996, and in denying a motion to reconsider that order, because the order was drafted by counsel for the plaintiff. The defendant argues that a trial court cannot mechanically adopt findings of fact and conclusions of law proposed by an attorney.

We held in *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996) that the verbatim adoption by a trial court of an order prepared by a party is not the preferred practice. However, we went on to state that a circuit court's doing so:

> ... does not constitute reversible error. Rather, "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." When viewed collectively, the above cases send a clear message: As an appellate court, we concern ourselves not with who prepared the findings for the circuit court, but with whether the findings adopted by the circuit court accurately reflect the existing law and the trial record.

196 W.Va. at 214, 470 S.E.2d at 168 (citations omitted).

We have reviewed the circuit court's order and hold that the findings and conclusions therein accurately reflect the existing law and the trial record. The motion to reconsider was therefore properly denied.

## D.

*Conflict of Interest by Plaintiff's Counsel*

■ Liberty Mutual argues that the trial court erred in not disqualifying plaintiff's counsel, Brent K. Kesner, from representing the plaintiff. Liberty Mutual argues that because Mr. Kesner represented Allstate Insurance Company in the early stages of this lawsuit to protect the interests of defendant Howerton, he is precluded from subsequently representing the plaintiff.

As indicated previously, following his May 1989 accident with defendant Howerton, the plaintiff agreed in August 1990 to settle with Mr. Howerton's insurance carrier, Allstate, for the $50,000 limits of Mr. Howerton's liability insurance policy.

At some point in time Allstate retained the legal services of attorney Kesner to prepare the necessary documents to finalize the settlement. The contract between Allstate and Mr. Kesner's law firm discussing the scope of representation is not contained in the record. Furthermore, while the settlement agreement with the plaintiff is also not in the record, the parties appear to agree that the settlement agreement released Mr. Howerton from further liability to the plaintiff, and further released any subrogation rights which Liberty Mutual (the plaintiff's underinsured motorist carrier) might have had against Mr. Howerton.

Following the settlement, plaintiff Kalwar hired Mr. Kesner to file the instant action against Mr. Howerton and Kalwar's own insurance carrier, Liberty Mutual, to recover underinsured motorist benefits. Since the filing of this action in May 1991, attorney Kesner has continuously represented the plaintiff's interests.

On July 20, 1992, Liberty Mutual filed a motion to disqualify Mr. Kesner due to a perceived conflict of interest. Although there is no evidence in the record supporting or controverting this motion, Mr. Kesner states he informed the trial court that he was hired by Allstate solely to represent Allstate's interests, and that he never represented Mr. Howerton in any capacity. On August 21, 1992, the trial court entered an order finding that no conflict existed between

Mr. Kesner's "representation of Plaintiffs and counsel's former drafting of a release for the insurer of Defendant, Barry Lee Howerton[.]"

Upon review of the record, we are troubled to see an attorney representing the interests of parties on both sides of this dispute. *W.Va.Rules of Professional Conduct* Rule 1.9 states:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or substantially related matter in which that persons interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

The comments to Rule 1.9 state that "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited." Furthermore, "[i]nformation acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client."

We cannot determine from the existing record the extent of contact between Mr. Howerton, his insurance company (Allstate) and Mr. Kesner. But it is certainly likely that Allstate employees took statements from Mr. Howerton and gathered evidence concerning the accident with the plaintiff, and just as likely that Mr. Kesner was privy to this information in the claims file when he was hired by Allstate. Furthermore, even though Mr. Kesner claims he was acting entirely in the interests of Allstate, the settlement agreement with the plaintiff appears to have fully released Mr. Howerton from all liability to the plaintiff and defendant Liberty Mutual.

Because of a lack of evidence in the record showing that Mr. Kesner notified and obtained the consent of both Allstate Insurance

Company and defendant Howerton for his subsequent representation of the plaintiff, we believe that an inference could be drawn that Mr. Kesner encroached upon the bounds of the *Rules of Professional Responsibility.*

However, because of the similar lack of evidence in the record regarding how Liberty Mutual was prejudiced by Mr. Kesner's representation of the plaintiff, we cannot say that the trial court erred in refusing to disqualify Mr. Kesner from representing the plaintiff. We therefore must rely upon the trial court's ruling that Mr. Kesner's representation of the plaintiff was proper.[6]

### IV.

#### Conclusion

For the aforementioned reasons, the circuit court's order of October 7, 1996 is affirmed.

Affirmed.

---

**6.** Liberty Mutual raises as a point of error the circuit court's denial of a motion to dismiss the plaintiff's May 7, 1991 complaint for failure to state a claim. We find no merit to this issue.