507 S.E.2d 406

**WESTFIELD INSURANCE COMPANY, an Ohio corporation, Plaintiff below,**

v.

**Frank W. BELL, individually, and as Executor of the Estate of Betty R. Bell, Defendant below.**

**No. 24475.**

Supreme Court of Appeals of West Virginia.

Submitted March 17, 1998.

Decided July 14, 1998.

---

Michael D. Lorensen, Bowles, Rice, McDavid, Graff & Love, P.L.L.C., Martinsburg, West Virginia, Attorney for Plaintiff below.

Russell R. Marks, Hagerstown, Maryland, Attorney for Defendant below.

PER CURIAM: [1]

The insurance coverage dispute in this case comes to the Court as a certified question from the United · States District Court for the Northern District of West Virginia. The District Court has certified a two-part question to this Court. As discussed below, based upon the factual situation presented by the District Court, we answer both parts of the question in the negative.

## I.

Beginning in May 1990, the defendant below, Frank Bell began purchasing automobile insurance coverage from the plaintiff below, Westfield Insurance Company ("Westfield"). Since 1990, Mr. Bell has maintained single-limit liability coverage of $500,000.00, and underinsured motorist coverage of $100,000.00.

This case involves *W.Va.Code*, 33–6–31d [1993],[2] a statute passed by the legislature

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. *W.Va.Code*, 31–6–31d [1993] states:

   (a) Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article shall be made available to the named insured at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such cov-

erage available and the number of vehicles which will be subject to the coverage. The form shall be made available ˚for use on or before the effective date of this section. The form shall allow any named insured to waive any or all of the coverage offered.

   (b) Any insurer who issues a motor vehicle insurance policy in this state shall provide the form to each person who applies for the issuance of such policy by delivering the form to the applicant or by mailing the form to the applicant together with the applicant's initial premium notice. The applicant shall complete, date and sign the form and return the form to the insurer within thirty days after receipt thereof. No insurer or agent thereof is liable for payment of any damages applicable under any optional uninsured or underinsured coverage authorized by section thirty-one of

and made effective on April 10, 1993. That statute required the insurance commissioner to create a form for insurance companies to follow in making offers of optional underinsured motorist coverage to new and existing policyholders. *W.Va.Code,* 33-6-31d(c) [1993] required insurance companies to mail (or otherwise deliver to) all persons who were already policyholders on the effective date of the statute a copy of the insurance commissioner's form, and the policyholder was to be allowed 30 days to complete and return the form. If the policyholder failed to return the form within 30 days, *W.Va.Code,* 33-6-31d [1993] creates a presumption that the policyholder received an effective offer of coverage and made a knowing and intelligent rejection of the offer.

In July 1993, pursuant to *W.Va.Code,* 33-6-31d, the West Virginia Insurance Commissioner issued "West Virginia Informational Letter No. 88," and the parties stipulated that Westfield received this form sometime during or after July 1993. Informational Letter No. 88 specifies the form that insurance carriers are required to use in making offers of optional uninsured and underinsured coverage.

In May 1993, between the time *W.Va.Code,* 33-6-31d became effective and July 1993 when the Insurance Commissioner issued Informational Letter No. 88, Westfield mailed the defendant a four-page form offer giving Mr. Bell the option to purchase underinsured motorist coverage. The form defined underinsured motorist coverage, allowed the defendant to check a box indicating the level of coverage he desired, and stated the cost of that coverage.[3] The form indicated that the

---

this article for any incident which occurs from the date the form was mailed or delivered to the applicant until the insurer receives the form and accepts payment of the appropriate premium for the coverage requested therein from the applicant: Provided, That if prior to the insurer's receipt of the executed form the insurer issues a policy to the applicant which provides for such optional uninsured or underinsured coverage, the insurer shall be liable for payment of claims against such optional coverage up to the limits provided therefor in such policy. The contents of a form described in this section which has been signed by an applicant shall create a presumption that such applicant and all named insureds received an effective offer of the optional coverages described in this section and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form. Such election or rejection shall be binding on all persons insured under the policy.

(c) Any insurer who has issued a motor vehicle insurance policy in this state which is in effect on the effective date of this section shall mail or otherwise deliver the form to any person who is designated in the policy as a named insured. A named insured shall complete, date and sign the form and return the form to the insurer within thirty days after receipt thereof. No insurer or agent thereof is liable for payment of any damages in any amount greater than any limits of such coverage, if any, provided by the policy in effect on the date the form was mailed or delivered to such named insured for any incident which occurs from the date the form was mailed or delivered to such named insured until the insurer receives the form and accepts payment of the appropriate premium for the coverage requested therein from the applicant. The contents of

a form described in this section which has been signed by any named insured shall create a presumption that all named insureds under the policy received an effective offer of the optional coverages described in this section and that all such named insured exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form. Such election or rejection is binding on all persons insured under the policy.

(d) Failure of the applicant or a named insured to return the form described in this section to the insurer as required by this section within the time periods specified in this section creates a presumption that such person received an effective offer of the optional coverages described in this section and that such person exercised a knowing and intelligent rejection of such offer. Such rejection is binding on all persons insured under the policy.

(e) The insurer shall make such forms available to any named insured who requests different coverage limits on or after the effective date of this section. No insurer is required to make such form available or notify any person of the availability of such optional coverages authorized by this section except as required by this section.

3. The pertinent information concerning underinsured motorist coverage provided to Mr. Bell in May 1993 on Westfield's form was:

Combined Single Limit

| Limit of Coverage | First Car | Rate<br>Each Add'l Car |
|---|---|---|
| $50,000 | $5 | $4 |
| $100,000 | $12 | $11 |
| $200,000 | $30 | $29 |
| $300,000 | $37 | $36 |
| $350,000 | $44 | $43 |
| $400,000 | $44 | $43 |

defendant could purchase $500,000.00 in underinsured motorist coverage for a price of $50.00 for the first car, and $49.00 for each car thereafter. The May 1993 form also states that if the defendant:

> FAIL[ED] TO COMPLETE, SIGN AND RETURN THIS FORM, FAILURE WILL INDICATE TO U.S. THAT YOU HAVE MADE A KNOWING AND INFORMED DECISION TO RETAIN THE COVERAGES AND LIMITS OF COVERAGE CURRENTLY SHOWN ON YOUR DECLARATIONS PAGE FOR BOTH UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE.

The defendant never completed, signed and returned this form to Westfield. Therefore, his underinsured motorist coverage remained at $100,000.00, the amount he purchased the previous years. In 1994 and again in 1995 Westfield mailed Mr. Bell additional forms suggesting that he could purchase up to $400,000.00 underinsured coverage—an amount less than his $500,000.00 liability policy. Mr. Bell failed to return the form in either year, and thereby retained his $100,000.00 underinsured coverage.

On July 30, 1995, the defendant and his wife were involved in an automobile accident. The accident resulted in severe injuries to Mr. Bell, and the death of his wife, Betty Bell. The parties agree that the damages sustained by Mr. Bell on his own behalf and on behalf of his wife's estate will exceed the available liability insurance from the tortfeasor.

## II.

On July 1, 1996, plaintiff Westfield filed a declaratory judgment action against Mr. Bell in the United States District Court for the Northern District of West Virginia. After discovery by the parties, the District Court certified the following two-part question to this Court:

> When an insurer does not use a form required by West Virginia Code § 33–6–31d (April 1993), published, but not formally adopted, by the West Virginia Insurance Commissioner, to offer its insured the same underinsured motorist coverage limit as his $500,000.00 single limit of liability insurance, does the insured have $500,000.00 of underinsured motorist coverage by operation of law or is the insurer permitted to litigate the issue of a commercially reasonable offer under the *Bias* decision?

As discussed below, we answer both parts of the question in the negative.

This case concerns whether the insurance company made a commercially reasonable offer of underinsured motorist coverage to its policyholder. When a consumer purchases an automobile liability insurance policy in West Virginia, *W.Va.Code*, 33–6–31 [1988] requires the insurance carrier to offer the consumer the option to also purchase underinsured motorist insurance coverage up to the dollar limits of his liability insurance.[4] In *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), we held that the insurance carrier bears the burden of proving that a commercially reasonable offer of underinsured coverage was made to the consumer. If the insurance carrier fails to introduce sufficient proof of a commercially reasonable offer, then underinsured motorist coverage in an amount equal to the limits of liability coverage is automatically included in the insurance policy.

We stated in Syllabus Points 1 and 2 of *Bias:*

> 1. Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer

---

| | | |
|---|---|---|
| $500,000 | $50 | $49 |
| $1,000,000 | $73 | $72 |

4. *W.Va.Code*, 33–6–31(b)[1988] stated, in pertinent part, that every automobile insurance policy:

> ... shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

*W.Va.Code*, 33–6–31 was revised in 1995, but no changes were made affecting this appeal.

was made, and that any rejection of said offer by the insured was knowing and informed.

2. When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured.

We made it clear in *Bias* that the "commercially reasonable offer" made by the insurance company must be made "so as to provide the insured with adequate information to make an intelligent decision. The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved." 179 W.Va. at 127, 365 S.E.2d at 791 (citations omitted).

■ Defendant Bell argues that this case hinges on *W.Va.Code*, 33–6–31d [1993], and its requirement that insurance carriers make a commercially reasonable offer as required by *Bias* by using a form "prepared and made available by the insurance commissioner." In this case, the insurance carrier made an offer in May 1993, one month after *W.Va. Code*, 33–6–31d became effective, but 2 months before the insurance commissioner prepared and made available the required form. The defendant argues that even though the insurance carrier did offer the defendant $500,000.00 in underinsured motorist coverage as required by statute, that offer is invalid because it did not follow the statutorily prescribed form.

We disagree with the defendant's argument. Our decision in *Bias* only required that the offer state, "in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved." Until July 1993, when the insurance commissioner issued Informational Letter No. 88, *Bias* was the only controlling guideline regarding commercially reasonable offers of coverage required by *W.Va.Code*, 33–6–31(b). While an offer of optional coverage had to be made by an insurance company in compliance with *W.Va.Code*, 33–6–31d and the insurance commissioner's guidelines after July 1993, we believe that any offer prior to July 1993 is acceptable if within the mandate of *Bias*.[5]

■ We therefore hold that the fact that the insurance carrier did not use the form required by *W.Va.Code*, 33–6–31d [1993] when that form had not yet been promulgated by the insurance commissioner does not automatically render an offer invalid and "commercially unreasonable." If the insurance carrier in this case made a commercially reasonable offer of coverage in accord with *Bias* and the policyholder's $500,000.00 limit of liability insurance, the policyholder does not have $500,000.00 of underinsured motorist coverage by operation of law. Furthermore, the failure of an insurance carrier to use the prescribed form prior to July 1993 does not automatically require that a trial be held to determine whether a commercially reasonable offer was made under *Bias*.

### III.

As indicated above, we answer both parts of the District Court's question in the negative.

Certified Questions Answered.

---

**5.** The defendant's argument focuses on subsequent offers of underinsured motorist coverage made by Westfield. At some point in 1994, Westfield mailed Mr. Bell another form offer of underinsured motorist coverage that complied with the insurance commissioner's Informational Letter No. 88 in all but one respect: the form offered only up to $400,000.00 in coverage, rather than to the full $500,000.00 in coverage required by *W.Va.Code*, 33–6–31(b), the amount of his liability coverage. In April 1995, Westfield again made the same offer of only up to $400,-000.00 in coverage. Mr. Bell did not return either of these forms to Westfield, thereby indicating his rejection of additional coverage.