**Jimmy AMMONS, Plaintiff,**

v.

**TRANSPORTATION INSURANCE COMPANY, et al.,
Defendants.**

**No. 00–CV–1080.**

United States District Court,
S.D. Ohio,
Eastern Division.

Aug. 29, 2002.

Andrew J. Wilhelms, Clark, Perdue, Roberts & Scott, Columbus, OH, for Plaintiff.

D. John Travis, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, Mark A. Bramble, Kesner, Kesner & Bramble, Charleston, WV, Karen E. Kahle, Steptoe & Johnson, Ellen L. Medaglio, Parkersburg, WV, for Defendants.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Plaintiff's and Defendant Allstate Indemnity Company's Cross–Motions for Summary Judgment on Uninsured Motorist Coverage Issues. Allstate Indemnity Company ("Allstate") filed its Motion for Summary Judgment on Uninsured Motorist Coverage Issues on December 12, 2001. On January 8, 2002, the Plaintiff filed a Consolidated Motion for Partial Summary Judgment Finding that Plaintiff is Entitled to Uninsured Motorist Benefits from Allstate and Memorandum Opposing Allstate's Motion for Summary Judgment. Then, on January 9, 2002, Defendant Erie Insurance Group ("Erie") filed a Memorandum Contra Allstate's Motion for Summary Judgment on Uninsured Motorist Coverage Issues. On January 25, 2002, Allstate filed a Reply to Plaintiff's and Erie's Responses to its Motion for Summary Judgment. Finally, on February 8, 2002, the Plaintiff filed a Reply in Support of his Motion for Partial Summary Judgment. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Based on the following analysis, the Court **GRANTS** the Plaintiff's Motion for Partial Summary Judgment and **DENIES** Allstate's Motion for Summary Judgment on Uninsured Motorist Coverage Issues.

## II. BACKGROUND

### A. Facts

On August 22, 1998, the Plaintiff, Jimmy Ammons ("Ammons"), was involved in an automobile collision with Defendant Shane Britton ("Britton") in Grandview, Washington County, Ohio. At the time of the accident, Britton was an uninsured driver. On June 26, 2002, the parties filed a Stipulation with this Court, agreeing that Britton's negligence was the sole proximate cause of the motor vehicle collision described in Ammons' Complaint.

At the time of the accident, Ammons, a West Virginia resident, was driving a delivery truck that was licensed in West Virginia and leased by his employer, Flowers Baking Company of West Virginia, Inc. ("Flowers"), of Bluefield, West Virginia. At the time of the accident, Flowers was insured under a motor vehicle liability policy issued by Allstate under policy number 649714270 BAP ("Policy"). The Policy has a $2,000,000 liability limit. While driving his employer's vehicle in Ohio, Ammons was acting within the scope of his employment with Flowers. As such, Ammons was insured under the Policy and the automobile he was driving was covered under the Policy.

The Policy contains a form entitled "West Virginia Uninsured Motorist Coverage Offer" ("Form"). At the top of the Form is written *"IMPORTANT NOTICE"* (emphasis in original). The Form states that West Virginia requires insureds to purchase Uninsured Motorist ("UM") coverage with limits "not less than $20,000 per person, $40,000 per accident for uninsured bodily injury losses, and $10,000 for uninsured property losses." It goes on to state that the "law also requires that [the insured] be given the opportunity to purchase higher limits." The Form then briefly explains the type of protection provided by UM coverage.[1]

Page two of the Form is headed "Uninsured Motorist Coverage Offer," and states: "Below are the different limits and the *12 month premium* available to you." Neither a premium nor the liability limits available, however, actually appear printed on the form. The Form then reads: "Number of vehicles subject to the premiums below: _____." No number is filled in on the blank line following the word "below." The next line states: "Vehicle Description: See vehicle schedule." Finally, beneath the portion of the Form that states "I select," "$50,000" is written in next to a section labeled "mandatory limits." Beneath the line where "$50,000" has been written appear optional limits of $100,000, $200,000, $250,000, $300,000, and $350,000.

On the third page of the Form, Scott Rich ("Rich"), the Director of Corporate Insurance and Benefits for Flowers' parent company, has signed the Form beneath the statement, "I have read the IMPORTANT NOTICE, attached on Uninsured motor vehicle coverage and understand how this coverage works. I have been given the opportunity to select the optional limits of Uninsured motor vehicle coverage listed above and have selected the coverage that matches the limit I have checked."[2]

---

1. The Form also states that Underinsured Motorist ("UIM") coverage is available, and explains that West Virginia does not require insureds to purchase such protection.

2. Rich also signed the Form indicating that he, on behalf of Flowers, rejected the optional UIM coverage.

## B. Procedural History

On August 14, 2000, Ammons filed a Complaint in the Washington County, Ohio Court of Common Pleas, seeking recovery for the damages he suffered as a result of his collision with Britton. Then, on September 14, 2000, Defendant Transportation Insurance Company ("Transportation") removed the case to this Court. Subsequently, on October 30, 2001, Ammons voluntarily dismissed Transportation as a party Defendant. Currently, Ammons seeks UM coverage benefits from Allstate, Flowers' insurer, and Erie, Ammons' personal insurer.

This matter is now before the Court on the Plaintiff's and Allstate's Cross–Motions for Summary Judgment on the UM coverage issue. In particular, Allstate contends that Ammons is entitled to, at the most, $50,000 in UM coverage under the Policy, while Ammons asserts that he is entitled to UM coverage equal to Flowers' liability limits of $2,000,000. Although Erie remains a Defendant in this action, for the purposes of the Cross–Motions for Partial Summary Judgment, only the Allstate Policy is at issue.

## III. STANDARD OF REVIEW

When presented with cross-motions for summary judgment, courts should " 'evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party.' " *Bakery & Confectionary Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio,* 133 F.3d 955, 958 (6th Cir.1998) (quoting *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994)). Significantly, a case is not necessarily appropriate for resolution at summary judgment simply because both parties have moved for summary judgment. *B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 593 (6th Cir.2001). "The filing of cross-motions for summary judgment does not nec-essarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991) (citing *John v. State of La. (Bd. of Trustees for State Colleges & Univs.),* 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed only by one party to the litigation. *Taft Broad.,* 929 F.2d at 248. Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations … but … must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). The nonmoving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). Furthermore, the mere existence of a scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## IV.  ANALYSIS

Ammons contends that, pursuant to West Virginia law, the UM coverage provided under the Policy extends to the $2,000,000 liability limits of the Policy.[3] Allstate argues, first, that Ammons lacks standing to make this argument. Second, Allstate contends that even if he has standing to make the argument, Ammons' claim must fail because the Policy clearly provides for UM coverage only up to a $50,000 limit.

### A.  Standing

■ Allstate argues that Ammons lacks standing to assert that the coverage pro-

vided under the Policy should be "rolled up" to $2,000,000 because he was not a party to the insurance contract that was negotiated between Flowers and Allstate. Allstate contends that Ammons' right to coverage is derived solely from his status as an occupant in the vehicle covered by the Policy. Allstate relies on *Starr v. State Farm Fire & Cas.,* 188 W.Va. 313, 423 S.E.2d 922 (1992), for support. In *Starr,* an occupant of an insured vehicle sought to stack the uninsured and underinsured motorist coverages available to the named insured. Addressing this issue, the court distinguished between individuals who are named insureds under the policy (Class One) and individuals who are insured solely by virtue of their status as an occupant in an insured vehicle (Class Two). *Id.* 423 S.E.2d at 927. The court then found that a Class Two claimant "has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer and there is no basis upon which he can reasonably expect multiple coverages." *Id.* (internal quotation omitted). Based on this ruling, Allstate concludes that Ammons has no contractual relationship with Allstate and, therefore, he cannot assert rights that belong to Flowers.

The Court finds *Starr* to be inapposite. Unlike the plaintiff in *Starr,* Ammons is not seeking multiple coverages. To the contrary, Ammons seeks the limits of his existing UM coverage. His argument that the coverage should be "rolled up" to the Policy limits is not an argument that he should receive more than is provided for by the Policy. Rather, he argues that the Policy actually provides for UM coverage up to a $2,000,000 limit. The parties do

---

**3.** Erie also filed a Memorandum Contra Allstate's Motion for Summary Judgment, setting forth virtually the same arguments as those proffered by Ammons. For the sake of sim-

plicity, the Court shall refer to all of the arguments presented in opposition to Allstate's motion as Ammons' arguments.

not dispute that Ammons is entitled to recover benefits under the Policy. The fact that he was not in a direct contractual relationship with Allstate is irrelevant to the need to determine the extent of the benefits to which he is entitled.

Therefore, the Court **DENIES** Allstate's Motion for Summary Judgment on Uninsured Motorist Coverage Issues on the ground that Ammons lacks standing to assert that the coverage extends to the $2,000,000 policy limits.

## B. Extent of UM Coverage Provided by the Policy

West Virginia law[4] establishes the minimum amount of UM coverage that must be included in every automobile insurance policy, and places a duty on insurers to offer optional UM coverage equivalent to the bodily injury liability limits of the policy. West Virginia Code § 33–6–31 states, in relevant part:

> Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of this code, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident: Provided, however, That such endorsement or provisions may exclude the first three hundred dollars of property damage resulting from the negligence of an uninsured motorist: Provided further, That *such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.*

W. Va.Code § 33–6–31(b) (emphasis added).

■ The West Virginia Supreme Court set forth a definitive interpretation of this provision in *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987). In *Bias,* the court held that, where an offer of optional insurance coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of the offer by the insured was both knowing and informed. *Id.* 365 S.E.2d at 791 (citations omitted). Furthermore, the offer of optional coverage must be made in a "com-

---

4. On April 25, 2001, Ammons filed a Motion for Partial Summary Judgment on Choice of Law Issue, arguing that Ohio law controlled the determination of the extent of his UM coverage under the Policy. As was set forth in this Court's September 25, 2001 Order, however, Ammons subsequently withdrew that motion and stipulated that West Virginia law controls this issue.

mercially reasonable manner." *Id.* In particular, the offer must set forth, "in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved." *Id.* Finally, and most significantly, any optional coverage that is required by statute to be offered to the insured is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection of that offer by the insured. *Id.*

Subsequently, in 1993, in an apparent effort to clarify the meaning of *Bias* and to establish uniformity with respect to offers of UM coverage, the West Virginia legislature promulgated West Virginia Code § 33–6–31d, which outlines the manner in which insurers in West Virginia must offer optional UM coverage. The statute requires insurance companies to offer optional UM and UIM coverage on a standardized form promulgated by the West Virginia Insurance Commissioner. The statute states, in pertinent part:

> Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article *shall be made available* to the named insured at the time of initial application for liability coverage and upon any request of the named insured *on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commissioner* and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any or all of the coverage offered.

W. VA.CODE § 33–6–31d(a) (emphasis added).

In July 1993, pursuant to § 33–6–31d, the West Virginia Insurance Commissioner issued "West Virginia Informational Letter No. 88." Informational Letter No. 88 sets forth the information that must be contained in all UM and UIM option forms. The letter specifies that, "at a minimum, the form must: 1) Inform a named insured of the optional coverages offered; 2) Inform the named insured of the rate calculation for the optional coverages including amount of coverage and the number of vehicles; and 3) Give the named insured the option to reject the optional coverage." The form goes on to state:

> As to each named insured notified, the insurer must provide: 1) The number of vehicles covered by the policy; 2) Whether there is a multi-car discount used in the premium calculation; 3) The agent's name . . . 4) The policy number; 5) the named insured's existing coverage level(s) . . .; and 6) the policy period . . .; [sic] 7) the premium amount for that policy period which would apply to each optional UIM and UM coverage offered by the insurer for which the named insured is eligible.

■ Allstate argues that, despite the fact that it failed to provide Flowers with the UM coverage form prescribed by Informational Letter No. 88, Flowers nonetheless gave a knowing and informed waiver of any UM coverage beyond $50,000. In making this argument, Allstate relies on certain deposition testimony provided by Rich, Flowers' Director of Corporate Insurance and Benefits, Daniel Schubert ("Schubert"), a risk manager for Flowers, and Tram Norris ("Norris"), Allstate's agent who worked with Rich and Schubert. In particular, Rich testified that, in 1997, when he purchased insurance from Allstate, he was aware that West Virginia had

a minimum UM coverage requirement. He testified that he instructed Allstate that, with respect to the entire fleet of vehicles that he was insuring, he wanted the minimum UM coverage required or no UM coverage at all in the states where it was not required.[5] In addition, Schubert testified that he recalled Norris having informed him that UM coverage was available to the policy limits. Finally, Norris explained, based on his prior business dealings with Rich, that Rich wanted no or minimum UM coverage because he was concerned about creating a situation in which an individual would be able to collect twice for the same accident (i.e. from worker's compensation provided by the company and from the UM coverage).

Allstate acknowledges that the forms it provided to Rich did not comply with § 33–6–31d, as they contained neither a listing of each vehicle covered under the policy nor the premiums associated with each optional level of coverage. Allstate contends, however, that strict compliance was not necessary under these circumstances. In particular, Allstate argues that the "oppressive paperwork" that would have been necessary made it impractical for it to list each vehicle in the Flowers fleet. Instead, it simply attached a schedule of vehicles to the policy, and wrote "see vehicle schedule" on the UM Coverage Form.

In addition, Allstate argues that it would be "ridiculous" for it to have to set forth the entire range of possible premiums associated with insuring hundreds of vehicles in a corporate fleet because the negotiations regarding such insurance coverage spanned over a period of months, and were engaged in between individuals experienced in and knowledgeable about the field of insurance. Allstate also asserts that it

would be unreasonable to have to list all such options in light of the fact that Rich knew from the outset that Flowers was not interested in getting more than the minimum coverage required. Allstate bases most of these arguments on its premise that § 33–6–31d was promulgated to assist unsophisticated consumers who do not understand the meaning or purpose of UM coverage.

The Court rejects Allstate's invitation to carve out an exception to the insurer's duty to comply with § 33–6–1d's statutory requirements when dealing with a corporate consumer. As a threshold consideration, Allstate has cited no support for its blanket assertion that § 33–6–31d was promulgated solely to assist unsophisticated consumers who do not understand the meaning or purpose of UM coverage. Though it may be logical to assume that such a statute primarily aids such consumers, there is no indication of such a limitation in the language of the statute. Presumably, the legislature was aware at the time that it drafted the statute that both inexperienced individuals and sophisticated corporations would seek automobile insurance. Nonetheless, the statute was written with language that applies to all automobile insurance policies, regardless of who negotiates them. Furthermore, the West Virginia Supreme Court has explicitly rejected Allstate's contention that an offer that does not contain all of the requisite information is nonetheless effective if it is made to a sophisticated, knowledgeable consumer. See *Kalwar v. Liberty Mut. Ins. Co.*, 203 W.Va. 2, 506 S.E.2d 39, 43 (1998). In *Kalwar*, the insurer failed to notify the insured, an attorney, that he was entitled to UM coverage at a level equal to the limits of his liability coverage.

---

**5.** Rich was contracting with Allstate for insurance policies that covered automobiles being used in numerous states, some of which, like West Virginia, had minimum UM coverage requirements, and some of which made UM coverage completely optional.

On appeal, the insurer argued that the offer was nonetheless commercially reasonable because, as an attorney, the insured was "well aware of his coverage, as any lawyer would be." *Id.* The insurance company also pointed out that the insured had requested UM coverage in an amount far less than his policy limits. *Id.* Rejecting this argument, the court stated:

> we know of no exception to our holding in *Bias* that suggests that a law school graduate is automatically endowed with knowledge of the prices of insurance coverage offered by Liberty Mutual. Accordingly, as a matter of law Liberty Mutual failed to provide the plaintiff with the necessary information from which he could have made a knowing, intelligent choice either to select or reject a higher level of underinsured motorist coverage.

*Id.* Allstate's argument that it had no need to provide Flowers with all of the possible premiums because Allstate was dealing with a knowledgeable, sophisticated consumer flies in the face of *Kalwar.*

The Court finds, furthermore, that Allstate's offer of UM coverage to Flowers did not meet the requirements established for such offers by the West Virginia case law. First, Allstate's Form did not comply with the relatively straightforward requirements of *Bias.* Before the legislature promulgated § 33–6–31d, *Bias* required that an offer of UM coverage state, in specific terms, not only the nature of the coverage offered and the coverage limits, but also the costs involved. *Bias,* 365 S.E.2d at 791. By Allstate's own admission, it failed to include the possible costs involved because it found the inclusion of such information to be too daunting a task. Furthermore, since § 33–6–31d was adopted, the West Virginia Supreme Court has found that the offer must not only comply with *Bias,* but it must be written on a form prepared in conformity with the Insurance Commissioner's guidelines, as set forth in Informational Letter No. 88. In particular, in *Westfield Ins. Co. v. Bell,* 203 W.Va. 305, 507 S.E.2d 406, 410 (1998), the court found that, after July 1993, "an offer of optional coverage had to be made by an insurance company in compliance with W. Va.Code, 33–6–31d and the insurance commissioner's guidelines." *Id.* (addressing the efficacy of a form that was sent to the insured after § 33–6–31 became effective, but before the insurance commissioner prepared and made available the required form). Allstate, however, failed to comply with those guidelines.

Apparently ignoring this clear statement from the *Westfield* court, Allstate instead relies on a footnote in *Westfield* in which the court recognized that, after July 1993, the insurance company in that case made offers for UM coverage that complied with Informational Letter No. 88 in all but one respect—the forms offered only up to $400,000 in coverage, even though the policy had a $500,000 limit. The court noted that, although the offer was not in strict compliance with the statutory requirement, the insured nonetheless properly indicated his rejection of additional coverage when he did not return the forms sent to him by the insurer. *Id.* 507 S.E.2d at 410 n. 5. Allstate contends that, like the offers in *Westfield,* its offers of UM coverage may have had some technical deficiency, but substantially complied with the commissioner's guidelines and, therefore, should be deemed effective and commercially reasonable.

The Court finds that Allstate's argument ignores the obvious distinction between the error in *Westfield* and the omissions on the forms provided to Flowers. In particular, after July 1993, the insurance company in *Westfield* used the form prescribed by the Insurance Commissioner, and provided all of the information required thereon. The insurer simply made an error (likely a

clerical error) in providing that information. Allstate, on the other hand, completely excluded categories of information that were required to be provided with the offer of optional coverage. Allstate's omissions made it significantly less likely that the consumer receiving its Form was able to make a knowledgeable, informed decision as to whether to accept or reject the coverage being offered.

Allstate also argues that *Miller v. Hatton*, 184 W.Va. 765, 403 S.E.2d 782 (W.Va. 1991), controls the Court's determination here. In *Miller*, an employee of the Mountaineer Gas Company, the named insured, sought to "roll up" his employer's UIM coverage limits based on the insurer's failure to make an effective offer of optional UIM coverage. The insurance company presented the affidavit of the employer's representative, in which he stated that:

> he was responsible for the negotiation and purchase of a business automobile insurance policy. He further stated that prior to the purchase of the policy from Travelers, he had extensive discussions with the agent selling insurance on behalf of Travelers regarding the types of coverage available, the limits thereof, and the costs thereof. [He] also explained that underinsured motorist coverage was offered and stated that "after review, it was decided not to purchase said coverage."

*Id.* at 784 n. 2. Based on this testimony, and the failure of the claimants to provide any evidence to the contrary, the *Miller* court concluded that the employer had, in fact, rejected optional UIM coverage. *Id.* at 785. Allstate contends that this Court should find that the circumstances here are substantially similar to those in *Miller* and that, like the corporate representative did in that case, Rich made a knowing and intelligent waiver of optional UM coverage after being made an effective offer.

Again, however, Allstate ignores the obvious distinction between *Miller* and the case *sub judice*. Quite simply, *Miller* was decided under *Bias* in 1991, before § 33–6–31d and Informational Letter No. 88 were promulgated. As noted, the West Virginia Supreme Court has found that, since July 1993, insurers have been required to make offers for optional UM coverage in the manner prescribed by the 1993 statute and the Insurance Commissioner's guidelines. In fact, the West Virginia Supreme Court has recognized that the portion of *Bias* that sets forth the information that must be contained in an offer of optional coverage for it to be effective has been superceded by the requirements set forth in § 33–6–31d. *See Foutty v. Porterfield*, 192 W.Va. 105, 450 S.E.2d 802, 804 n. 5 (1994). Thus, the fact that the insurer in *Miller* may have satisfied that requirements that were imposed upon it does not control this Court's determination of whether Allstate satisfied its duty to make an effective, commercially reasonable offer of optional UM coverage in 1997.

Allstate's failure to comply with § 33–6–31d by failing to set forth a premium breakdown showing the cost of each optional coverage limit must be construed as a failure to make an effective and commercially reasonable offer. Without such an offer, there could be no knowing, intelligent waiver of the optional coverage. While the Court recognizes that it may, in fact, impose a considerable burden on insurers to present such information to sophisticated consumers who, even after due consideration, will reject the optional coverage, that finding is irrelevant to the Court's task here. Neither the statute nor the case law has carved out an exception for insurers dealing with sophisticated, corporate consumers, despite the fact that the West Virginia legislature and judiciary no doubt recognized that such consumers would come under the purview of the stat-

utory and insurance commissioner's guidelines. This Court sitting in diversity will not now do what the West Virginia legislature and judiciary have refused to do.

Therefore, the Court finds that Allstate did not meet its burden of proving that it made an effective offer of UM coverage up to the $2,000,000 limit of the Policy. Allstate's failure to make an effective offer as required by the statute means that the optional UM coverage up to the $2,000,000 Policy limit is included in the Policy by operation of law. *Bias*, 365 S.E.2d at 791. Therefore, the Court **GRANTS** the Plaintiff's Motion for Partial Summary Judgment and **DENIES** Defendant Allstate Indemnity Company's Motion for Summary Judgment on Uninsured Motorist Coverage Issues.

## V.  CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Plaintiff's Motion for Partial Summary Judgment and **DENIES** Defendant Allstate Indemnity Company's Motion for Summary Judgment on Uninsured Motorist Coverage Issues.

**IT IS SO ORDERED.**