365 S.E.2d 789

Janice BIAS

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY.

Nancy A. YOUNG and Royce N. Young

v.

AETNA LIFE AND CASUALTY
COMPANY.

Bonnie K. RAINEY and
Henry T. Rainey

v.

UNITED STATES FIDELITY AND
GUARANTY INS. UNDERWRITERS,
INC. and Fidelity and Guaranty Insur-
ance Company.

Anoway SMITH

v.

FEDERAL KEMPER INSURANCE
COMPANY.

No. CC 966.

Supreme Court of Appeals of
West Virginia.

Dec. 8, 1987.

Opinion Concurring in Part
and Dissenting in Part
Feb. 24, 1988.

**126**

Sam R. Harshbarger, Milton, for plaintiffs.

John F. Wood, Jr., Huntington, for U.S. Fidelity & Guar., Aetna Life.

Edward M. Kowal, Jr., Huntington, for Nationwide Mut.

D.C. Offutt, Jr., Huntington, for Federal Kemper, Ins. Co.

Randall L. Trautwein, Huntington, for State Farm Mut. Auto.

McGRAW, Chief Justice:

This proceeding involves certified questions from the Circuit Court of Cabell County. Following a serious bus accident, some of the passengers filed lawsuits against the bus owner and his insurer, Nationwide Mutual Insurance Company. Several plaintiffs also named their own insurers as defendants, asserting coverage for uninsured and underinsured motorists. Nationwide established a $250,000.00 escrow account to cover its liability as the bus insurer, and the plaintiffs in the instant case participated in the damage determination and settlement agreement which resulted in the distribution of that escrow sum among the passengers making claims against the bus liability policy.

These plaintiffs next sought payment from their own insurers for the difference between their damages as determined through the settlement process and their pro rata share of the escrow fund. The plaintiffs assert that they are entitled to underinsured motorist coverage on their own automobile policies, and further contend that their insurers are bound by the damage findings made during the settlement process. One of the plaintiffs' insurance companies, Nationwide, contests coverage and all of the insurers deny they are bound by the settlement's damage assessment. The circuit court certifies to us the questions of whether there is coverage by operation of the underinsured motorist provision of West Virginia Code § 33-6-31 (Supp.1987) and of whether the defendant insurance companies are bound by the damage findings of the special commissioner in the settlement agreement.[1] We agree with the court below that Code § 33-6-31 extends underinsured motorist coverage to the plaintiffs, but we find that the defendant insurance companies are not bound by the damage findings made as part of the settlement process.

I.

Code § 33-6-31(b) addresses both uninsured and underinsured motorist coverage. It provides, first, that every automobile liability insurance policy issued or delivered in West Virginia contain uninsured motorist coverage with minimal limits of coverage as set forth in West Virginia Code § 17D-4-2 (1986 Replacement Vol.). Additionally, it provides that each policy shall offer an option for somewhat higher dollar limits of uninsured motorist coverage, which coverage is automatic unless waived in writing by the insured. The section's third proviso is that each policy *shall offer an option* for both uninsured and underinsured motorist coverage up to the dollar limits of the liability insurance purchased by the insured.

---

1. The certified questions, along with the ruling of the circuit court are as follows:

*Certified Question Number One*—Are the defendant insurance companies bound by the damage findings made by George Stolze, Special Commissioner of the Circuit Court of Cabell County, whose findings were made in exact compliance with the settlement agreement?

*Ruling of the Circuit Court*—The defendant insurance companies are bound by the damage findings made by George Stolze, Special Commissioner of the Circuit Court of Cabell County, whose findings were made in exact compliance with the settlement agreement.

*Certified Question Number Two*—Does West Virginia Code, 33-6-31(b) extend underinsured motorist coverage to insureds who have not declined the coverage?

*Ruling of the Circuit Court*—West Virginia Code 33-6-31(b) extends underinsured motorist coverage by operation of law to insureds who have not declined the coverage, in writing.

■ The statute says that an underinsurance option *shall* be offered, and this language must be afforded a mandatory connotation. Syl.Pt. 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982). Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980), and that any rejection of said offer by the insured was knowing and informed, *Kimbrell v. Great American Ins. Co.,* 420 So.2d 1086 (Fla.1982); *Lane v. Waste Management, Inc.,* 432 So.2d 70 (Fla.App. Dist.1983). The insurer's offer must be made in a commercially reasonable manner, so as to provide the insured with adequate information to make an intelligent decision. *State Farm Mutual Automobile Insurance Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555 (1987). The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved. *Id.; Tucker v. Country Mutual Insurance Co.,* 125 Ill.App.3d 329, 80 Ill.Dec. 610, 465 N.E.2d 956 (1984). When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured. *Wannamaker,* 291 S.C. 518, 354 S.E.2d 555; *Tucker,* 125 Ill.App.3d 329, 80 Ill.Dec. 610, 465 N.E.2d 956; *Holman,* 288 N.W.2d 244; *see Lane,* 432 So.2d 70.

■ Of the defendant insurance companies in this case, only Nationwide contests coverage. While we agree with that defendant that Code § 33–6–31(b) does not require that underinsurance coverage be waived in writing, the insurer has presented no proof on the record before us that it made an effective offer of underinsured motorist coverage to Plaintiff Bias, and such coverage is, therefore, included in her policy by operation of law. Thus, we agree with the circuit court's ruling on the second certified question, except that this Court finds nothing in the statute or relevant case law which requires that an insured must reject such coverage in writing.

## II.

■ Turning to the other certified question, the circuit court ruled that the defendant insurance companies are bound by the damage findings made in compliance with the settlement agreement. The defendants argue that they should not be bound by these findings, citing both contract and equity theories. The Court agrees and answers the certified question in the negative. When the plaintiffs entered into the settlement agreement, they, in effect, submitted their claims against the bus owner and his liability insurer to binding arbitration, and could not contest the measure of damages arrived at by that process. However, it is made clear in the settlement agreement that the purpose of such agreement was to settle the claims against the bus owner and its insurer. Nothing in the settlement agreement speaks to the liability of the plaintiffs' underinsurance carriers or restricts any party's right to present or contest evidence regarding the nature and amount of such liability.

While the plaintiffs argue that the defendant underinsurance carriers consented to the settlement and, thus, agreed to be bound by the commissioner's damage assessments, the facts do not support that argument. The plaintiffs' brief specifies only that the plaintiffs and the bus liability insurer approved the settlement order entered by the circuit court; it is not contended that any of the underinsurance carriers signed the settlement. Although three of the four underinsurance carriers gave permission for their insured to participate in the settlement, nothing in that permission could be construed as forming an enforceable agreement to be bound by the commissioner's findings.[2] Indeed, the letters from the plaintiffs' counsel requesting the defendants' consent to participate indicated that

---

**2.** Aetna and USF & G simply indicated that they had no objections to their insureds participating in the settlement. Nationwide specifically reserved the right to defend the underinsurance claim in a separate action. Federal Kemper never gave its consent.

the plaintiffs needed that consent "in order that we may proceed against you on you[r] underinsured/uninsured motorists coverages." While no standard procedure has been established for settling with the liability carrier while preserving the underinsured motorist claim, 3 No–Fault and Uninsured Motorist Automobile Insurance (MB) § 30.70[4] (Oct.1985), we find the plaintiffs adequately notified the defendant carriers of the nature of their claims and the proposed settlement.[3] What they have accomplished thereby, however, is simply the preservation of their rights to proceed on the underinsurance claims, not a determination of damages.[4]

The plaintiffs also argue "equitable notions" to prevent the defendants from contesting the amount of damages suffered by the plaintiffs. The plaintiffs have cited no facts or law which would make proper the application of the doctrines of res judicata or collateral estoppel, which this Court thoroughly discussed in *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983).

This certified question is answered in the negative; the defendant insurance companies are not bound by the commissioner's damage findings. We recognize that these consolidated cases have been procedurally complex, and we trust that the circuit court will be able to deal with them in such a manner as to give effect to this Court's answers to the certified questions.

Answered and dismissed.

BROTHERTON, Justice, concurring in part and dissenting in part:

I agree with the majority's conclusion that the defendant insurance companies are not bound by the special commissioner's damage findings. I cannot, however, agree that W.Va. Code § 33–6–31(b) requires automatic inclusion of underinsured motorist coverage on the facts of this case. The language of the statute requires only that the insurer "provide an option" to purchase underinsured motorist coverage. This requirement is in stark contrast with the preceding passage, which requires inclusion of *uninsured* motorist coverage "unless the insured waives such coverage in writing." There is an express requirement that uninsured motorist coverage be waived in writing; there is no such express requirement for underinsured motorist coverage. The majority is correct in concluding from the statute that no written waiver is required to exclude underinsured motorist coverage. The majority's requirement that the insurer prove a knowing and intelligent waiver of the coverage, however, in effect reaches the opposite result. It is difficult to imagine how an insurer can prove such a waiver, absent a writing. The better holding would be to require the insurer to prove only that it made an effective offer of underinsured motorist coverage, as required by statute.

In addition to amending the statutory directive, the Court has effectively entered summary judgment for Ms. Bias even though the facts upon which the holding is based are in substantial dispute, and Nationwide has had no opportunity to present evidence of whether or not it made an effective offer and whether or not Ms. Bias waived coverage. Nationwide did not receive notice of, or participate in, the hearings before the special commissioner. Further, Nationwide cites affidavits of its employees which state that Ms. Bias had no underinsurance coverage with Nationwide, and that she was sent two mailings concerning the availability of underinsured motorist coverage. Although these offers were disputed by Ms. Bias, the majority's conclusion that "the insurer has presented no proof on the record before us that it made an effective offer of underinsured motorist coverage to plaintiff Bias" is not

---

**3.** Although they theoretically could have done so, none of the defendants made an attempt to preserve their subrogation rights against the tort-feasor bus owner. Given the bus owner's apparent asset situation, such attempts would most likely have proven impractical, and may have raised issues of the defendant's duty to act in "good faith." *See* 3 *No–Fault and Uninsured*

*Motorist* at § 30.70[40]; *see generally* 2 Widiss, Uninsured and Underinsured Motorist Insurance (Anderson) Ch. 43 (1987).

**4.** Because of the nature of our resolution of this issue, we need not address the due process arguments raised by the defendants.

warranted. In fact, Nationwide had no opportunity in the proceeding to present the facts supporting the offer. I believe that the insurance company should at least be afforded a chance to present the facts supporting its defense, and to have full consideration of all issues relating to its potential liability prior to entry of summary judgment.

For these reasons, I respectfully dissent.