410 S.E.2d 413

**Jason C. RIFFLE, Dottie J. Riffle, and Everett W. Riffle**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**

No. 20114.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1991.

Decided Oct. 16, 1991.

Ronald F. Stein, Shaw & Stein, Point Pleasant, for plaintiffs.

R. Carter Elkins, Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer and Herndon, Huntington, for defendant.

NEELY, Justice:

In this case the Circuit Court of Mason County has certified the following question to us:

> Is an insurance carrier obligated to provide underinsurance coverage in the limits of $100,000 per person and $300,000 per occurrence, on each of four automobile liability insurance policies held by the plaintiffs, when the liability limits on each of the four policies are $25,000 per person and $50,000 per occurrence after the jury has ruled, pursuant to *Bias v. Nationwide Mutual Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), that the plaintiffs did not make a knowing and informed rejection of an offer of underinsurance coverage on the four policies at issue when the plaintiffs held a fifth policy which provided liability limits of $25,000/$50,000 and underinsurance coverage limits of $100,000/$300,000?

We answer the certified question in the negative.

## I.

This certified question reaches us by stipulation of the parties. Jason Riffle was injured in an automobile accident on 6 November 1988. Mr. Riffle's friend, John Kinniard, was driving the car which belonged to Mr. Riffle's mother. After the accident, Mr. Riffle received $20,000 from Mr. Kinniard's insurance carrier and $130,000 from State Farm Insurance Company. The Riffles[1] sued State Farm seeking underinsured motorist coverage on each of four other automobile liability policies issued by State Farm to the Riffles.[2]

The liability limits on each of the four policies are $25,000 per person and $50,000 per occurrence. State Farm had previously offered the Riffles *underinsured* motorist coverage in excess of their own liability coverage on each of the policies for $100,000 per person and $300,000 per accident, which the Riffles did not accept. A jury decided that the Riffles' rejection of this coverage was not knowing and informed; therefore, the trial court held State Farm liable under this Court's decision in *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987).

The trial court ordered State Farm to pay $100,000 per person underinsured motorist coverage on each of the four policies. Apparently, the court decided that because the Riffles had not knowingly waived the $100,000 per person underinsured motorist coverage, the statute required State Farm to provide that amount of coverage. The parties then stipulated the certified question to this Court.

## II.

The issue in this case is the application of *W.Va.Code*, 33–6–31(b) [1988][3] and this Court's interpretation of that statute in *Bias, supra,* and *Miller v. Hatton*, 184 W.Va. 765, 403 S.E.2d 782 (1991). *W.Va.*

*Code*, 33–6–31(b) [1988] provides in pertinent part:

[The insurer] shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy....

■ Neither statutory construction nor the dictate of wise public policy supports the decision by the trial court. As we held in Syllabus Point 2 of *Bias, supra:*

When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured.

### A.

■ The plain language of *Bias* provides that if an insurer fails to prove an effective offer and a knowing waiver of the statutorily required coverage, then *that coverage* becomes part of the policy by operation of law. "That coverage" is the amount of coverage that the insurer is required to offer under the statute. The statute *requires the insurer to offer* underinsured motorist coverage "up to an amount not less than the limits of bodily injury liability insurance and property damage liability insurance." In the case of the four policies owned by the Riffles, these limits were $25,000 and $50,000. Accordingly, the plain language of the statute required State Farm to offer underinsured motorist coverage of $25,000 per person and $50,000 per occurrence. When State Farm could not prove a valid offer and a

---

**1.** The plaintiffs below were Mr. Riffle and both of his parents, Everett and Dottie Riffle.

**2.** We have previously permitted the stacking of underinsured motorist coverage. *See, State Automobile Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990).

**3.** Although *W.Va.Code* 33–6–31 was amended in 1988, the amendment does not effect the issues at stake in this case or the applicability of *Bias.*

knowing rejection, the statutory requirement became a part of each policy by operation of law.

### B.

The purpose of *W. Va. Code* 33–6–31 [1988] is to provide all insurance buyers with an opportunity to purchase a minimum amount of underinsured motorist coverage. When the buyer is not given this opportunity, the statute provides him with the minimum coverage. The statute and our decision in *Bias* encourage insurance companies to make a real effort to inform customers about the opportunity for underinsured motorist coverage. Our decision today strengthens that incentive. A ruling for the plaintiffs, on the other hand, would create an incentive for insurance companies to offer only the minimum required coverage. Insurance companies would offer only the minimum coverage so that in situations in which the coverage was waived, but where a jury later found the waiver to be unknowing, the company would have to provide only the minimum coverage as damages.

Clearly, the legislature did not intend to create a ceiling on the amount of coverage that insurance companies can offer; rather, it intended to create a floor below which the offered coverage could not go. A ruling in plaintiffs' favor in this case would in fact create such a ceiling. Therefore, we find *W. Va. Code* 33–6–31(b) [1988] mandates that when an insurer fails to prove an effective offer and a knowing and intelligent waiver by the insured, the insurer must provide only the minimum coverage required to be offered under the statute.

### III.

For the foregoing reasons, the certified question is answered in the negative.

Certified Question Answered.