George J. HALL, Jr., Administratrix of the Estate of George J. Hall, III, deceased; Suzanne Chavis, Administratrix of the Estates of Laurie J. Wiesner, deceased and Joshua A. Wiesner, deceased; and Michael Wiesner, Administrator of the Estate of Christopher Wiesner, II, deceased, Plaintiffs,

v.

Delores WIESNER, Administratrix of the Estate of Richard Wiesner, deceased; and State Farm Mutual Automobile Insurance Company, a corporation, Defendants.

Civ. A. No. 93–7–M.

United States District Court,
N.D. West Virginia.

March 1, 1994.

John E. Artimez, Jr., Artimez Law Offices, Moundsville, WV, for George J. Hall, Jr.

Mark Jenkinson, Hunt & Wilson, Martinsburg, WV, for Suzanne Chavis.

D. Michael Burke, Askin, Pill, Scales & Burke, Martinsburg, WV, for Michael Wiesner.

Gilbert Wilkes, III, Wilkes & Associates, L.C., Martinsburg, WV, for Delores Wiesner.

Curtis G. Power, III, Steptoe & Johnson, Martinsburg, WV, Tracey Brown Dawson, Steptoe & Johnson, Hagerstown, MD, for State Farm Mut.

## ORDER

MAXWELL, Chief Judge.

Pending before the Court is defendant State Farm's Motion for Summary Judgment filed with a supporting memorandum of law on November 30, 1993. The motion has been fully briefed and is mature for disposition.[1]

This action was brought to recover for the wrongful death of plaintiffs' decedents and to seek a declaratory judgment regarding underinsured motorist coverage. By stipulated Order entered June 4, 1993, the Court directed that separate trials would be conducted and that the declaratory judgment action would commence prior to the trial of the wrongful death action. The instant Motion for Summary Judgment addresses the issue of underinsurance coverage raised by the cause of action for declaratory judgment.

It is undisputed that, on December 25, 1990, the plaintiffs' decedents were passengers in an automobile owned and operated by Richard Wiesner. The vehicle left the road on Low Water Bridge and was swept into Back Creek. Richard Wiesner, Christopher Wiesner, Sr., and the plaintiffs' decedents were killed.

It is further undisputed that, at the time of the accident, passenger Christopher Wiesner, Sr., was the named insured under an automobile liability policy with defendant State Farm, which policy provided bodily injury coverage protection with limits of $100,000.00 per person, $300,000.00 per accident. State Farm disputes the availability of underinsurance coverage under said policy.

State Farm urges that Christopher Wiesner, Sr., had not purchased underinsured motorist coverage for the period during which the accident occurred but had knowingly and intelligently waived such coverage in response to two commercially reasonable offers. The plaintiffs, however, contend that Christopher Wiesner, Sr., had not knowingly and effectively waived underinsured motorist coverage and that coverage exists by operation of law pursuant to *Bias v. Nationwide Mutual Insurance Company*, 179 W.Va. 125, 365 S.E.2d 789 (1987).

 While the parties disagree somewhat over the application of certain case law, they appear to agree on certain aspects of underinsurance law. Every liability insurance policy issued or delivered in West Virginia shall offer an option for underinsurance motorist coverage up to the dollar limits of the liability insurance purchased by the insured. *Bias v. Nationwide*, 365 S.E.2d at 790. This is mandatory.

 Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made and that any rejection of said offer by the insured was knowing and informed. The insured's offer must be made in a commercially reasonable manner, so as to provide the insured with adequate information to make an intelligent decision. The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved. *Bias*

---

1. Although not essential to the disposition of the pending motion, Local Court Rule 2.07(h) requires that "[a] copy of any unpublished opinion which is cited must accompany the brief as an attachment." Accordingly, the Court has not considered the *Fox v. Nationwide* unpublished opinion which was cited on page four of the

*v. Nationwide,* 365 S.E.2d at 791.[2]

■ When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured. *Bias,* 365 S.E.2d at 791. When it is found that an insurer failed to prove that an effective offer was made and that a waiver was knowing and informed, the amount of coverage included in the policy by operation of law is the amount the insurer is required to offer under the statute (the limits of bodily injury liability insurance in the policy). *Riffle v. State Farm Mut. Auto. Ins. Co.,* 186 W.Va. 54, 410 S.E.2d 413, 414 (1991).

State Farm has submitted several documents and two affidavits which tend to show that Laurie Wiesner, the wife of Christopher Wiesner, Sr., completed the application for the automobile liability policy on behalf of her husband, noting that she would also be a driver of the insured vehicle. The date of the application is April 4, 1988. It would also appear that on that date Laurie Wiesner signed a written rejection of underinsured motorist coverage.[3]

The plaintiffs do not deny that Mrs. Wiesner signed the rejection form. Nevertheless, they contend that the rejection form itself is evidence that the offer made on that date does not meet the strict standards set forth in *Bias,* particularly urging that the form does not reflect that Mrs. Wiesner was informed of the various coverage limits nor the costs of coverage. The plaintiffs also contend that West Virginia law does not permit a spouse to effectively waive coverage for the named insured.

In addition to the April 4, 1988 offer, State Farm alleges that another offer of underin-

sured motorist coverage was tendered in October 1988 when a brochure was enclosed with Mr. Wiesner's semi-annual policy renewal notice. The renewal notice advised:

SEE ENCLOSED INSERT ABOUT UNINSURED MOTOR VEHICLE— COVERAGE U AND UNDERINSURED MOTOR VEHICLE—COVERAGE W.

IF YOU WANT BOTH COVERAGE U AND COVERAGE W WITH LIMITS OF $100,000/$300,000 FOR BODILY INJURY AND $50,000 FOR PROPERTY DAMAGE, PAY $126.80.

IF NO CHANGE IN COVERAGE LIMITS IS DESIRED, PAY THE AMOUNT DUE.

IF DIFFERENT LIMITS ARE DESIRED, PLEASE SEE YOUR AGENT.

The enclosed brochure contained a table of coverage limits and semi-annual premiums for underinsured motorist coverage. State Farm contends that Mrs. Wiesner rejected this second offer by tendering a premium amount which did not include underinsurance coverage.

■ Once again, plaintiffs urge that Mrs. Wiesner may not effectively waive coverage for her spouse. In addition, plaintiffs argue that State Farm has failed to show that Christopher Wiesner received notice of the second offer nor has State Farm produced evidence of any document which bears the signature of Laurie or Christopher Wiesner, Sr., with regard to the second offer. The plaintiffs also advance an argument that State Farm must make an effective offer of underinsured motorist coverage with each semi-annual premium notice and that, there-

---

defendant's Memorandum in Support of Motion for Summary Judgment.

**2.** Effective April 10, 1993, optional limits of uninsured and underinsured motor vehicle coverage shall be made available to the named insured at the time of initial application for liability coverage, and upon any request of the named insured, on a form prepared and made available by the insurance commissioner. The form shall allow any named insured to waive any or all of the coverage offered. *West Virginia Code* § 33–

6–31d(a). The form, when signed or when the insured fails to return it, creates a presumption that the applicant and all named insureds received an effective offer and exercised a knowing waiver. *Code* § 33–6–31d(b).

**3.** The Affidavit of Vonda Marple indicates that, in making the offer to Mrs. Wiesner, she explained the nature of underinsured motorist coverage, the limits of such coverage, and the costs of such coverage.

fore, an effective waiver was not made within the relevant policy period.[4]

■ Two preliminary questions of law must be addressed before analyzing the standard for summary judgment. First, plaintiffs urge the Court to disregard the agents' affidavits because they relate to specific and direct conversations with one of the decedents, which, it is contended, violates the West Virginia Dead Man's Statute, *West Virginia Code* § 57–3–1. While plaintiffs attempt to distinguish *Cross v. State Farm Mut. Auto. Ins. Co.*, 182 W.Va. 320, 387 S.E.2d 556 (1989), the Court finds no distinction between the issue presented in *Cross* and the issue under consideration.

Upon certified questions from the United States Court of Appeals for the Fourth Circuit, the West Virginia Supreme Court, in *Cross*, held that the Dead Man's Statute does not bar the testimony of an insurer's agents that they orally informed the decedent of the costs of various levels of uninsured motorist coverage, where the only assertion is that the insurer's agents are incompetent witnesses by virtue of their interests as agents. *Cross v. State Farm*, 387 S.E.2d at 563. Here, plaintiffs suggest that they are not objecting on the basis of interest but because the affidavits relate to specific conversations with a dead person. A reading of *Cross*, however, reflects that the Supreme Court was well aware that the agents would be testifying about specific conversations with dead persons and would not have remained silent on the issue if it was pertinent. In fact, the second certified question specifically addresses conversations between agents and the deceased which led to the alleged waiver of coverage.

■ Having addressed this initial question, the Court must also address plaintiffs' claim that Mrs. Wiesner could not effectively waive underinsured motorist coverage for Mr. Wiesner. While the West Virginia Supreme Court of Appeals has not specifically addressed this question, *West Virginia Code* § 33–6–31(c) provides that the term "named insured" shall mean the person named as such in the declarations page of the policy and shall also include such person's spouse if a resident of the same household and that the term "insured" shall mean the named insured, and, while resident of the same household, the spouse of any such named insured. Accordingly, Laurie Wiesner was an insured and a named insured under the policy in question at the time of application and the October 1988 renewal.[5]

In its third proviso, *West Virginia Code* § 33–6–31(b) requires that each policy of automobile liability insurance issued in the State of West Virginia contain an offer to the **insured** for underinsured motorist coverage up to the dollar of liability limits purchased by the **insured**. Likewise, in *Bias v. Nationwide*, 365 S.E.2d at 791, the Supreme Court found that:

> Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made ... and that any rejection of said offer by the **insured** was knowing and informed.... The insurer's offer must be made in a commercially reasonable manner, so as to provide the **insured** with adequate information to make an intelligent decision.... The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved. When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the **insured**. (citations omitted/emphasis added).

Thus, West Virginia law obligates the insurer to offer underinsurance coverage to the

---

4. The plaintiffs cite no authority in support of this suggestion; the Court has found no authority which requires a new offer with each renewal; and the Court will, therefore, not impose such a requirement.

5. Although plaintiffs have submitted the affidavit of Suzanne Chavis, mother of Laurie Wiesner, which suggests that Laurie may not have been residing with her husband at the time of the accident, there is no evidence to suggest that Laurie was not residing with her husband in April 1988 when she applied for the policy or at the time of the October 1988 renewal.

"insured." By statutory definition, Laurie Wiesner is both an insured and named insured of the policy in question. Neither statute nor case law inhibits her ability to consider an offer of optional coverage. As an insured, the Court must recognize her authority to waive such coverage. Therefore, the Court finds that Laurie Wiesner was authorized to receive, consider, and reject an option of underinsured motorist coverage with regard to the motor vehicle insurance policy in issue in this case. This ruling is without prejudice to the issue of whether an effective offer was made or a knowing and informed rejection was received from either of the named insureds.

■ Having resolved the preliminary questions of law, the Court must now consider whether State Farm is entitled to summary judgment. From the text of Rule 56 of the Federal Rules of Civil Procedure, it is clear that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Motions for summary judgment impose a difficult standard on the movant; for, it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248, 106 S.Ct.

at 2510; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

■ As earlier discussed, West Virginia law imposes the burden of proof upon the insurer to establish the offer of coverage was made and that any rejection of coverage by the insured was knowing and informed. Governed by these principles, the Court believes that the evidence reflects that State Farm tendered offers of underinsurance coverage in April 1988 and October 1988 and that these offers, particularly when considered together, were made in a commercially reasonable manner. It would appear that the October 1988 offer explained the nature of the coverage offered, the coverage limits, and the costs involved. Thus, State Farm complied with the requirements imposed by the State of West Virginia and fulfilled its obligation to offer its insured the option to purchase underinsured coverage.

Despite two separate offers of underinsurance coverage, Laurie Wiesner refused to take advantage of underinsurance coverage. The purpose of *West Virginia Code* § 33–6–31 is to provide all insurance buyers with an opportunity to purchase a minimum amount of underinsured motorist coverage. The insureds were given this opportunity and, therefore, knowingly rejected the offers of coverage. Accordingly, it is

ORDERED that defendant State Farm's Motion for Summary Judgment be, and the same is hereby, GRANTED. With regard to the cause of action seeking declaratory judgment, the Court finds that the automobile liability policy of insurance issued by the defendant to Christopher Wiesner, Sr., did not include coverage for underinsured motorist benefits. It is further

ORDERED that, pursuant to the Court's scheduling Order of June 4, 1993, the wrongful death cause of action was stayed pending disposition of the action for declaratory judgment. Inasmuch as the proceedings on the declaratory judgment cause of action have now concluded, counsel shall advise the Court, within twenty (20) days from the date

of this Order, whether further prosecution of the wrongful death action will be pursued.