**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WESTFIELD INSURANCE COMPANY, an
Ohio Corporation,
<u>Plaintiff-Appellee,</u>

v.

No. 99-2528

FRANK WALTER BELL, personally and
as personal representative of the
Estate of Betty Bell,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CA-96-45-3)

Argued: June 7, 2000

Decided: August 4, 2000

Before MURNAGHAN, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Russell R. Marks, GILBERT, MARKS, SCHUBEL &
DIGIROLAMO, P.A., Hagerstown, Maryland, for Appellant. Michael
Douglas Lorensen, BOWLES, RICE, MCDAVID, GRAFF & LOVE,
P.L.L.C., Martinsburg, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This claim involves a dispute between Westfield Insurance Company and Frank Bell, a policyholder. Westfield sold an automobile policy to Bell in 1990, which provided $500,000 in standard liability coverage, and $100,000 in uninsured or underinsured motorist ("UIM") coverage. In 1993, and every year thereafter when the policy was renewed, Westfield offered Bell the opportunity to purchase higher levels of UIM coverage. Bell, however, did not accept these offers and his coverage for damage caused by underinsured motorists remained at $100,000.

In 1995, Bell and his wife were hit by an underinsured drunk driver. Mrs. Bell was killed and Mr. Bell was seriously injured. Bell now claims that he is entitled to $500,000 in coverage for damage caused by the underinsured motorist. He claims that Westfield's offer for increased coverage - which is required by West Virginia law - was commercially unreasonable and also that his rejection of that offer was not knowing and intelligent.

After certifying questions to the West Virginia Supreme Court of Appeals, the District Court granted Westfield's motion for summary judgment, which Bell now appeals. Because we agree with the District Court that Westfield is entitled to summary judgment, we affirm.

I.

Westfield Insurance Company sells automobile insurance in the State of West Virginia. In May of 1990, Westfield sold a policy to Frank Bell providing $500,000 in standard liability coverage and $100,000 in UIM coverage. Each year thereafter, Westfield sent a policy renewal package to Bell including a Declaration page listing

all current levels of coverage, the automobiles covered, and the premium charges.

In April of 1993, the West Virginia legislature passed West Virginia Code § 33-6-31d which requires all insurance companies to offer and make available UIM coverage to all policyholders in an amount up to the level of coverage purchased for standard liability. In other words, if a policyholder carries $500,000 in standard liability coverage, the insurance company is required by law to offer the policyholder $500,000 in UIM coverage. The law also refers to a standard form, prepared by the state insurance commissioner, to be used by the insurance companies in offering the UIM coverage to policyholders. The insurance commissioner, however, did not make the form available until July of 1993, three months after the law was passed.

In May of 1993, immediately after the law was passed and became effective, Westfield contacted Bell and offered him the opportunity to purchase up to $500,000 in UIM coverage. Because the official form prepared by the state insurance commissioner was not yet available, Westfield used its own form to make the offer. The form was identified as Form AD 8043 and was sent along with Bell's annual renewal package in May of 1993.

Form AD 8043 explained the meaning of UIM coverage, how much coverage Bell currently carried, and how much he was entitled to purchase along with the premium prices for additional coverage. Included on pages one, three, and four in large, capitalized, bold-faced type were warnings that failure to complete the form indicated a decision to retain the current levels of coverage.

Bell never returned a signed copy of the form. He was offered additional coverage in each renewal package sent to him in 1994 and 1995. He declined to purchase additional coverage and retained only $100,000 in UIM coverage.

On July 30, 1995, Bell and his wife were involved in a serious car accident caused by a drunk driver. Mrs. Bell was killed and Mr. Bell sustained serious injuries. The responsible driver carried only $100,000 in liability coverage, and the damages sustained by the Bells

far exceeded that amount. Thus, the responsible driver was an underinsured motorist.

Bell's attorney contacted Westfield and told the company that his client was entitled to $500,000 in UIM coverage by operation of law. Westfield maintained that Bell was entitled to only $100,000 in UIM coverage, since Bell was offered and declined to purchase additional coverage.

In July of 1996, Westfield filed a declaratory judgment action against Bell. The District Court certified two questions to the West Virginia Supreme Court of Appeals, which dealt primarily with the fact that Westfield had not used the official form published by the state insurance commissioner when it initially offered to Bell the opportunity to purchase higher levels of UIM coverage in May of 1993. The state court answered the certified questions and held that

> the fact that the insurance carrier did not use the form required by W. Va. Code 33-6-31d [1993] when that form had not yet been promulgated by the insurance commissioner does not automatically render an offer invalid and "commercially unreasonable." If the insurance carrier in this case made a commercially reasonable offer of coverage in accord with Bias and the policy holder's $500,000 limit of liability insurance, the policyholder does not have $500,000 of underinsured motorist coverage by operation of law. Furthermore, the failure of an insurance carrier to use the prescribed form prior to July 1993 does not automatically require that a trial be held to determine whether a commercially reasonable offer was made under Bias.

Westfield Ins. Co. v. Bell, 507 S.E.2d 406, 410 (W. Va. 1998).

In August of 1999, the District Court issued a Memorandum Opinion and Order granting Westfield's motion for summary judgment. Bell has now appealed.

II.

This court reviews an order granting a motion for summary judgment de novo. AT&T Comm. v. Bell Atlantic-Virginia, Inc., 197 F.3d

4

663, 668 (4th Cir. 1999). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). The central questions in this case are whether Westfield made a commercially reasonable offer for additional UIM coverage as required by statute, and whether Bell exercised a knowing and intelligent rejection of that offer.

A.

Under West Virginia law, a commercially reasonable offer is one that provides the insured with adequate information to make an intelligent decision. Bias v. Nationwide Mutual Ins. Co., 365 S.E.2d 789, 791 (W. Va. 1987). The offer must state in definite, intelligible, and specific terms the nature of the coverage offered, the coverage limits, and the costs involved. Id.

The offer sent to Bell by Westfield on form AD 8043 easily meets these requirements. The description of UIM coverage is found on page one of the four-page form. The first section includes a question/answer format and lists the question "What is underinsured motorist coverage?" The answer printed on the form is:

> This coverage pays up to the limits of coverage for bodily injuries to you and persons insured under your auto policy, and for damage for insured property, which result from an auto accident that is the fault of another driver with some liability insurance, but not enough to fully pay you or persons insured under your auto insurance policy for the injuries and damages sustained.

The form also identifies eight levels of coverage available for underinsured motorist coverage, ranging from zero to $1 million. The form lists the premium prices for each level of coverage.

The District Court concluded that there was no "serious challenge to the commercially reasonable nature of the offer." The form used by the insurance company was clearly written in easy to understand terms. It was identified as an important matter requiring a response.

5

There is nothing confusing or misleading about the offer and therefore -- given the absence of any dispute concerning the contents of the form -- we agree that it was, as a matter of law, commercially reasonable.

Bell argues that there is a material issue of fact as to whether the offer was commercially reasonable, because his expert gave deposition testimony suggesting that the form used by Westfield was confusing and therefore not commercially reasonable. The expert's deposition testimony found fault with the offer form because of slight disparities in the terminology used, failure clearly to identify the current level of underinsured motorist coverage, and confusion about whether the quoted premiums referred to a six or twelve month period. Thus, Bell argues that a jury could find that the offer was not commercially reasonable.

We disagree. While the form is perhaps not letter-perfect, as Bell's expert suggests, the law does not require a "perfect" offer, but only one that is "commercially reasonable." This form explained what underinsured motorist coverage is and how much it costs. There can be no serious question that the offer was reasonable. We therefore affirm the District Court's finding that form AD 8043 was a commercially reasonable offer and satisfies the requirements set out in West Virginia Code § 33-6-31d and Bias.

B.

Bell further argues that even if the offer form sent by Westfield was a commercially reasonable offer, he is still entitled to $500,000 in coverage by operation of law since his rejection of the offer was not a "knowing and intelligent" rejection as required by statute. Bell contends that the knowing and intelligent standard is subjective, and that he did not know what "underinsured motorist coverage" was in 1993 when the offer was sent. This, he argues, creates an issue of fact for a jury.

The District Court found that Bell's rejection was knowing and intelligent because the form advised him (in bold-faced, capitalized type) that action was required and that failure to complete the form would indicate he had made a knowing and informed decision to

6

retain his present level of UIM coverage as shown on the declaration page of his policy.

The District Court was correct. Bell cannot simply assert that he did not understand the meaning of inaction, when the form he received clearly and unambiguously explained the significance of inaction. Moreover, Westfield's position is supported by the statute itself. Section 33-6-31d, subsection d, states:

> Failure of the applicant or a named insured to return the form described in this section to the insurer as required by this section within the time periods specified in this section creates a presumption that such person received an effective offer of the optional coverages described in this section and that such person exercised a knowing and intelligent rejection of such offer.

West Virginia Code § 33-6-31d(d)(emphasis added). Thus, contrary to Bell's argument, his failure to respond to the offer for additional coverage can properly be considered a knowing and intelligent waiver of his right to purchase additional UIM coverage.

Considering both the plain, prominent language contained on the offer form, and the statutory presumption that failure to return the form constitutes a knowing rejection, the District Court was correct in concluding that Bell's rejection of the additional coverage was knowing and intelligent.

III.

Mr. Bell suffered a terrible loss in the 1995 car accident that took his wife's life and caused him serious injury. His desire to recoup additional damage payments from the insurance company is certainly understandable. His claim that he is entitled to more coverage than he purchased, however, is not legally supportable.

The District Court order granting summary judgment in favor of Westfield is therefore

AFFIRMED.