**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**STATE OF WEST VIRGINIA EX REL. ERIE**
**INSURANCE PROPERTY & CASUALTY**
**COMPANY,**
**Petitioner**

**FILED**
**February 13, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 16-0884**

**THE HONORABLE DAVID W. NIBERT**
**AND TAMARA HARDMAN, INDIVIDUALLY**
**AND AS ADMINISTRATRIX OF THE ESTATE OF**
**EMILY ELIZABETH-ANNE HARDMAN,**
**Respondents**

**MEMORANDUM DECISION**

This is a writ of prohibition proceeding filed under the original jurisdiction of this Court by Petitioner, Erie Insurance Property & Casualty Company (hereinafter "Erie"), through counsel, James D. Lamp and Matthew J. Perry. Erie seeks to have this Court prohibit enforcement of an order by the Circuit Court of Jackson County that granted class action certification to the Respondents, Tamara Hardman individually and as administratrix of the estate of Emily Elizabeth-Anne Hardman (hereinafter "the Respondents"). The Respondents, through counsel, Brent K. Kesner and Ernest G. Hentschel, contend that the writ should be denied because class action certification met all the requirements of Rule 23 of the West Virginia Rules of Civil procedure.

This Court has considered the parties' briefs, the appendix submitted, and the parties' oral arguments. Upon consideration of the standard of review, the Court grants the writ of prohibition. In view of prior precedent on the dispositive issue presented in this case, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The underlying facts of this case are not complicated. It appears that on or about October 1, 2006, Emily Elizabeth-Anne Hardman was killed in an automobile accident in Jackson County, West Virginia. Emily was a passenger in a car driven by Samuel

1

Postlethwaite, when the car struck a solid rock embankment.[1]  Emily's estate recovered the policy limits from Mr. Postlethwaite's insurer, Nationwide Insurance Company.  The estate sought underinsured motorist coverage from a policy maintained by Emily's parents with Erie.  That policy provided underinsured motorist coverage in the amounts of $20,000 per person; $40,000 per occurrence; and $10,000 for property damage. However, the estate sought the liability limits under the policy on the theory that Erie's underinsured motorist coverage election/rejection forms did not comply with the West Virginia Insurance Commissioner's form.  The liability limits under the policy were $100,000 per person; $300,000 per occurrence; and $50,000 for property damage.  Erie refused to tender the liability limits.  Instead, at some point, Erie tendered the per person underinsured motorist limit under the policy, $20,000, to "Tamara Hardman, on behalf of the Estate of Emily . . . by way of interpleader."

The Respondents eventually filed a declaratory judgment action against Erie seeking a determination of the amount of benefits available under the policy.[2]  The complaint initially was amended to add claims for breach of contract, bad faith, and unfair settlement practices. A second amendment to the complaint was made that included allegations in support of a class action involving the use of election/rejection forms for underinsured motorist coverage that did not comply with the Insurance Commissioner's form.  The circuit court eventually certified a class in an order entered on November 12, 2010.  Erie filed a petition for a writ of prohibition with this Court to prohibit enforcement of the class action certification order. This Court issued an unpublished Memorandum Decision on June 14, 2011, granting the writ as moulded, which required the circuit court to enter an order certifying the class in compliance with the findings required by our precedents.  While the case was pending in the circuit court, it appears the Respondents filed a third amended complaint on June 8, 2016. The third amended complaint set out a class action claim "seeking declaratory relief as to the validity of . . . Erie's selection/rejection forms."  On July 13, 2016, the circuit court entered an order certifying a class "who were insureds under any Erie policy and who were injured by or suffered property damage caused by an act of an underinsured motorist, and who did not receive underinsured motorists coverage benefits at least equal to the liability limits stated in the policy declarations[.]"[3]  Erie thereafter filed the instant proceeding seeking to prohibit enforcement of the class action certification order.

---

[1]The pleadings indicate that Mr. Postlethwaite and another passenger also were killed in the accident.

[2]The limited record does not indicate the date the complaint was filed, but the civil action number suggests the complaint was originally filed in 2008.

[3]The order also set out a number of excluded persons.

2

This Court has "previously recognized that '[w]rits of prohibition offer a procedure . . . preferable to an appeal for challenging an improvident award of class standing.'" *State of West Virginia ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 450, 607 S.E.2d 772, 779 (2004) (quoting *McFoy v. Amerigas, Inc.*, 170 W. Va. 526, 532, 295 S.E.2d 16, 22 (1982)). It also has been held that "[t]his Court will review a circuit court's order granting or denying a motion for class certification pursuant to Rule 23 of the West Virginia Rules of Civil Procedure [1998] under an abuse of discretion standard." Syl. pt. 1, *In re West Virginia Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003).[4]

The standard for certifying a class action has been succinctly set out in Syllabus point 8 of *Rezulin* as follows:

> Before certifying a class under Rule 23 of the West Virginia Rules of Civil Procedure [1998], a circuit court must determine that the party seeking class certification *has satisfied all four prerequisites* contained in Rule 23(a)–numerosity, commonality, typicality, and adequacy of representation–and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should

---

[4]This Court's precise guidance for determining whether a writ of prohibition should issue was enunciated in Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

3

be allowed to proceed on behalf of the class proposed by the party.

214 W. Va. 52, 585 S.E.2d 52 (emphasis added). Erie contends that the Respondents failed to satisfy the commonality and typicality requirements of Rule 23(a) and the predominance requirement of Rule 23(b). We need only address the circuit court's findings with respect to the commonality requirement of Rule 23(a).[5] This is because "[i]f only one prerequisite is not met, class certification is not appropriate." *Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 699 (S.D. Ga. 2002). *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009) ("A court should not grant class certification unless it is satisfied, after a rigorous analysis, that all of the requirements of Rule 23(a) are met." (internal quotations and citation omitted)); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 249 n.3 (E.D. Pa. 2006) ("[T]he court must be satisfied that the plaintiffs satisfy all four prerequisites of Rule 23(a)."); *Noerr v. Greenwood*, No. 14320-NC, 2002 WL 31720734, at *2 (Del. Ch. Nov. 22, 2002) ("The plaintiff must satisfy all four requirements of Rule 23(a)."); *Rene ex rel. Rene v. Reed*, 726 N.E.2d 808, 816 (Ind. Ct. App. 2000) ("To obtain class certification, the students must satisfy all of the requirements of Trial Rule 23(A)."); *Jacobsen v. Allstate Ins. Co.*, 310 P.3d 452, 460 (Mont. 2013) ("[c]lass certification requires that the plaintiff satisfy all four requirements of Rule 23(a)."); *In re South Dakota Microsoft Antitrust Litig*., 657 N.W.2d 668, 671 (S.D. 2003) ("In order to obtain certification of a class, the plaintiffs must satisfy all the requirements of SDCL 15-6-23 (FRCP 23(a))."); .

To begin we will note that the Respondents' third amended complaint appears to have been motivated by our decision in *Thomas v. McDermitt*, 232 W. Va. 159, 751 S.E.2d 264 (2013).[6] The decision in *Thomas* presented a certified question wherein we were asked to

---

[5]In Syllabus point 11 of *Rezulin,* 214 W. Va. 52, 585 S.E.2d 52, we explained the commonality requirement as follows:

The "commonality" requirement of Rule 23(a)(2) of the West Virginia Rules of Civil Procedure [1998] requires that the party seeking class certification show that "there are questions of law or fact common to the class." A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of "commonality" is not high, and requires only that the resolution of common questions affect all or a substantial number of the class members.

[6]The circuit court's order specifically found that "[t]he State Supreme Court's ruling in *Thomas* prompted the Plaintiff to seek leave to amend her Complaint to clarify the relief sought."

4

determine what was the effect of an insurer's failure to use the Insurance Commissioner's underinsured motorist coverage forms pursuant to W. Va. Code § 33-6-31d. We answered the certified question in Syllabus point 12 of *Thomas,* 232 W. Va. 159, 751 S.E.2d 264, as follows:

> An insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to West Virginia Code § 33-6-31d (2011) results in the loss of the statutory presumption and a reversion to the standards enunciated in *Bias v. Nationwide Mutual Insurance Co.*, 179 W. Va. 125, 365 S.E.2d 789 (1987).[7]

(Footnote added). *See State ex rel. State Farm Mut. Auto. Ins. Co. v. Cramer*, 237 W. Va. 60, ___ n.7, 785 S.E.2d 257, 263 n.7 (2016) ("We made clear in *Thomas* that an insurer must use the Commissioner's form in order to gain the benefit of the statutory presumption that its offer of uninsured/underinsured coverage was effective, and that the insured's rejection of such coverage was knowing and intelligent.").[8]

The circuit court relied on the holding in *Thomas* in determining that the Respondents satisfied the commonality requirement of Rule 23(a):

---

[7]The third amended complaint expressly cited to the decision in *Bias* as part of the basis for relief. The second amended complaint did not mention *Bias*.

[8]Subsequent to our decision in *Thomas,* the Legislature amended W. Va. Code § 33-6-31d in 2015 and added the following new provision:

> (f) Notwithstanding any of the provisions of article six of this chapter to the contrary, including section thirty-one-f, for insurance policies in effect on December 31, 2015, insurers are not required to offer or obtain new uninsured or underinsured motorist coverage offer forms as described in this section on any insurance policy to comply with the amount of the minimum required financial responsibility limits set forth in subsection (b), section two, article four, chapter seventeen-d of this code. All such offer forms that were executed prior to January 1, 2016, shall remain in full force and effect.

The briefs of the parties have not mentioned nor cited to the amendment to W. Va. Code § 33-6-31d. We therefore refrain, at this time, from determining the impact of the amendment, if any, on our decision in *Thomas* and this litigation.

18. The Court finds that there are numerous common questions of law and fact present in this case amongst all of the proposed class members with respect to the validity of Erie's selection/rejection form. Specifically, Erie is alleged to have used the same defective underinsured motorist coverage selection/rejection form with respect to all members of the proposed class and its use of the form presents the same factual scenario in the case of each. Both the Plaintiff and the proposed class must prove that Erie violated W. Va. Code § 33-6-31d by failing to use the selection/rejection form promulgated by the Insurance Commissioner to offer underinsured motorists coverage to its customers and, therefore is not entitled to a statutory presumption under *Thomas*. The same proof is applicable to the claims of all of the putative class members since it is alleged that Erie used the same form throughout West Virginia over a period of many years (at least the entire time period encompassed by the class). Moreover, the effect of such proof would be the same with respect to each claim since the failure to make a commercially reasonable offer of underinsured motorists coverage using the Commissioner's form in each case would result in the loss of the presumption in each case. Therefore, Erie's use of an improper and defective selection/rejection form to offer underinsured motorists coverage is a common question of fact among all members of the proposed class which, if proven, would resolve in one action an issue which is central to all of the class members' claims for underinsured motorists coverage.

19. The Court further finds that issues regarding Erie's use of a defective form will be common to the class in light of the fact that the rights of all putative class members with respect to the loss of the statutory presumption under *Thomas* are affected by Erie's use of the same form and the same alleged defects in the form. Thus, proof of Erie's use of a defective selection/rejection form by one class member would be applicable to the claims of all other class members and a determination that Erie's UIM selection/rejection form is defective would apply to all other Erie customers who received offers of underinsured motorists coverage on the non-compliant form.

. . . .

     24.  In addition, the Court finds that the issue of the validity of the UIM selection/rejection form utilized by Erie in making mandatory offers of UIM coverage is a common issue necessary to the resolution of the claim for UIM benefits of every putative class member. As it is the burden of the insurer, in this case Erie, to prove that a commercially reasonable offer of UIM benefits has been made to the insured, it is a central issue to the claim for UIM benefits of every putative class member whether Erie utilized the form promulgated by the Insurance Commissioner or, instead, used a defective form. The Court has determined that Erie failed to use the prescribed form, and that the form utilized by Erie failed to inform Erie's insureds of the total cost for each optional level of UIM coverage. Without this essential information, Erie's insureds were unable to make . . . knowing and informed selections and/or rejections of coverage, since they could not compare the relative costs of the optional limits of UIM coverage available to them. This material issue, therefore, is a common issue that exists as a necessary foundation block for the claim of every class member, since Erie has based its rejection of UIM coverage for each putative class member solely upon its use of the defective form at issue in the present action.

A careful reading of the above findings reveals that the circuit court said the same thing numerous ways, as opposed to setting out "numerous common questions of law and fact." Distilled to its essence, the circuit court found that all purported class members would have to litigate the issue of whether Erie used an underinsured motorist coverage form that was not in compliance with the form required by the Insurance Commissioner, which would result in a loss of the presumption. We do not believe that this issue satisfies the common question of fact or law for class certification purposes. Erie has cited to two cases that have rejected the issue of noncompliance with a statutory form for underinsured motorist coverage as satisfying the commonality requirement for class certification.

The case of *Martin v. State Farm Mutual Automobile Insurance Co.*, 809 F. Supp. 2d 496 (S.D. W. Va. 2011), was litigated before Judge Chambers in the United States District Court for

7

the Southern District of West Virginia. The plaintiffs in *Martin* filed a complaint seeking, among other things, a declaratory judgment providing that, because the forms used by State Farm to offer UIM coverage to its insureds did not comply with West Virginia Code § 33-6-31d, State Farm failed to make commercially reasonable offers to each plaintiff and their policies must be reformed to carry UIM coverage in an amount equal to the respective policy's liability coverage limits.

*Martin*, 809 F. Supp. 2d at 500. The insurer in *Martin* moved for summary judgment as to only two of the three named plaintiffs, and the plaintiffs moved for an order certifying the case as a class action. As an initial matter, the district court found that the defendant did not use the underinsured motorist form required by the West Virginia Insurance Commissioner; therefore, the defendant lost the statutory presumption of making an effective offer of the optional coverages to the two summary judgment plaintiffs. The decision went on to find that the defendant made an effective offer of underinsured motorist coverage and that the two plaintiffs' rejection of such coverage was knowing and intelligent.[9] The opinion went on to address the class action certification issue as follows:

> While Plaintiffs' Motion for Class Certification is mooted by the dismissal of two of Plaintiffs' named plaintiffs, the Court nonetheless addresses the impact of its foregoing conclusions on the viability of class certification with respect to this action. By finding that *Bias* controls where the statutory presumption does not apply, the Court is now confronted with a proposed class of State Farm insureds, the resolution of whose cases require individual fact-finding under the *Bias* standard. . . . Here, the varying claims presented by the proposed class will require an intensive, individual fact-finding, as demonstrated by the Court's discussion of Martin's and Fleming's decedent's claims. Accordingly, the class proposed by Plaintiffs fails to meet the commonality requirement under Rule 23(a) of the Federal Rules of Civil Procedure. The Court therefore DENIES Plaintiffs' motion for class certification.

---

[9]*See Thomas*, 232 W. Va. at 173, 751 S.E.2d at 278 ("This Court agrees with the reasoning of the *Martin* court and also adopts that interpretation of the application of the statute.").

*Martin*, 809 F. Supp. 2d at 509-10.

In *Blake v. State Farm Mutual Automobile Insurance Co.*, 523 N.E.2d 85 (Ill. App. Ct. 1988), *superseded by statute on other grounds as stated in Royal Imperial Grp., Inc. v. Joseph Blumberg & Assocs., Inc.*, 608 N.E.2d 178 (Ill. App. Ct. 1992), the plaintiff was injured in an automobile accident. The tortfeasor was underinsured. However, the plaintiff did not have underinsured motorist coverage. The plaintiff sued his insurer for failing to offer him underinsured motorist coverage. The plaintiff contended that he did not obtain underinsured motorist coverage because the insurer used an inadequate insurance form, called an acknowledgment/rejection form, that did not comply with statutory requirements. The plaintiff sought to litigate his claim as a class action on the theory that the defendant's "use of the inadequate 'acknowledgement/rejection' form for 'new business' provided a sufficient basis for the similarity of law or fact required for class actions[.]" *Blake*, 523 N.E.2d at 87. The trial court refused to certify the case as a class action. On appeal, the appellate court affirmed the denial of class certification as follows:

> Blake inaccurately characterizes the instant case as one that turns on a pervasive question of law common to all class members. In the cases cited by Blake, the common question of law or fact was the basis for the law suit. The defendants' actions harmed all class members, although the harm to the individual class members may have varied somewhat by degree or circumstances in which it arose. In contrast, no commonality among members of the proposed class arose from the transaction of September 5, 1980, between Mr. and Mrs. Blake and State Farm's agent Ms. Trennert, and proof of Blake's claim would not give other proposed class members a right to recover. The instant case arose from an auto accident between Blake and an unnamed third party, and the allegations of improper offer stem from individual negotiations with State Farm's agent. *The circumstances of the case shows predominant individual issues despite an incidental question of law that may extend to other insureds.*

*Blake*, 523 N.E.2d at 88 (emphasis added).

The circuit court's certification order in the instant case attempted to distinguish *Martin* by addressing the factual differences in the coverage forms used in *Martin* and the instant case. This distinction is meaningless. *Martin* rejected class certification because the use of an unauthorized underinsured motorist coverage form was overwhelmed by the

requirement of individual fact-finding. The Respondents have attempted to distinguish *Martin* and *Blake* by arguing that, "[u]like *Martin* and *Blake* . . . , the class in this case was only certified for the purpose of resolving the common issue concerning the validity of Erie's selection/rejection forms. No individual factual determinations will be required." The Respondents have misunderstood the essence of class actions.

The United States Supreme Court addressed a similar issue in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). In *Wal-Mart*, the Supreme Court rejected class action certification of an employment discrimination case. One of the issues addressed in that case was the commonality requirement of federal Rule 23(a). The opinion made the following relevant comments about the commonality requirement:

> The crux of this case is commonality–the rule requiring a plaintiff to show that there are questions of law or fact common to the class. That language is easy to misread, since any competently crafted class complaint literally raises common questions. . . . Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. *This does not mean merely that they have all suffered a violation of the same provision of law*. . . . Their claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart*, 564 U.S. at 349-50, 131 S. Ct. at 2550-51, 180 L. Ed. 2d 374, (emphasis added) (internal quotations and citations omitted)).

The decisions in *Wal-Mart*, *Martin,* and *Blake* stand for the proposition that a violation of law as a common issue may not support class certification in a setting where individualized fact-finding is necessary. As noted by the Fourth Circuit, "[w]hat matters to class certification . . . is not the raising of common questions–even in droves–but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 128 (4th Cir. 2013) (internal quotations and citation omitted). *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) ("[t]he members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant."); *Likes v. DHL Express*, 288 F.R.D. 524, 536 (N.D. Ala. 2012) (rejecting class certification because resolution of the common issue meant "that

individualized determinations of fact would need to be decided as to each DHL contractor relationship").

In the instant case, under Syllabus point 12 of *Thomas*, a violation of W. Va. Code § 33-6-31d by Erie would permit the Respondents to litigate their underinsured claim under Syllabus point 1 of *Bias*. The dispositive common issues or contentions in this case are set out in Syllabus point 1 of *Bias* as follows:

> Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed.

179 W. Va. 125, 365 S.E.2d 789. Resolving the common contentions of whether Erie made "an effective offer" to each of the members of the class, and whether each class member's rejection of that offer was "knowing and informed," requires individual determination. That is, resolution of these issues for the Respondents will not resolve the issues for any other class member. *See, e.g.*, *Jewell v. Ford*, 211 W. Va. 592, 596, 567 S.E.2d 602, 606 (2002) ("[E]ven if an effective offer of optional uninsured motorist coverage was made to Jewell, we believe that a genuine issue of material fact exists as to whether she made a knowing and intelligent waiver of the additional, optional coverage."); *Parham v. Horace Mann Ins. Co.*, 200 W. Va. 609, 620, 490 S.E.2d 696, 707 (1997) ("[T]he trial court clearly informed the jury that Appellees had the burden to prove it made a commercially reasonable offer of insurance and that Appellants made a knowing and intelligent rejection of such insurance."); *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W. Va. 54, 55, 410 S.E.2d 413, 414 (1991) ("A jury decided that the Riffles' rejection of this coverage was not knowing and informed; therefore, the trial court held State Farm liable under this Court's decision in *Bias v. Nationwide Mut. Ins. Co.*, 179 W. Va. 125, 365 S.E.2d 789 (1987)."); *Miller v. Hatton*, 184 W. Va. 765, 768, 403 S.E.2d 782, 785 (1991) ("The appellants contend that Travelers did not prove that there was an effective offer and a knowing and intelligent waiver by the insured at the time the insurance was procured. . . . The appellants, however, presented no evidence in opposition to Travelers' explanation of the negotiations regarding underinsurance coverage."). *See also Webb v. Shaffer*, 694 F. Supp. 2d 497, 505 (S.D. W. Va. 2010) ("Because the Court finds the required offer was commercially reasonable, the only remaining issue presented is whether, when viewed in the light most favorable to the plaintiff, there is a genuine issue of material fact with respect to whether Mr. Kilgore knowingly and intelligently rejected such offer. The Court finds that there is not.").

The *Bias* issues are the central common questions in this litigation. The circuit court totally ignored these substantive issues in order to certify a class on *Thomas*' holding

involving the loss of a presumption. The loss of the presumption under *Thomas* is a matter that a trial court may resolve as a matter of law, *i.e.*, it ordinarily would not be a jury question.

In view of the foregoing, the writ of prohibition prayed for is granted, and the trial court is prohibited from enforcing its class certification order of July 13, 2016.

Writ Granted.

ISSUED: February 13, 2017

CONCURRED IN BY:
Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker